United States District Court

For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

INFINEON TECHNOLOGIES AG,

          Plaintiff,

   v.

VOLTERRA SEMICONDUCTOR
CORPORATION,

          Defendant.

_____/

No. C-11-6239 MMC

**ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANT'S
MOTION TO DISMISS**

     Before the Court is defendant Volterra Semiconductor Corporation's ("Volterra")
motion, filed June 1, 2012, to dismiss the First Amended Complaint ("FAC") or, in the
alternative, for a more definite statement.  Plaintiff Infineon Technologies AG ("Infineon")
has filed opposition thereto, to which Volterra has replied.  Having read and considered the
papers filed in support of and in opposition to the motion, the Court rules as follows.[1]

**BACKGROUND**

     Volterra "designs, develops and markets proprietary, high-performance analog and
mixed-signal power management semiconductors . . . that transform, regulate, deliver and
monitor the power consumed by digital semiconductors."  (See FAC ¶ 7.)  Infineon alleges
Volterra directly and indirectly infringes four of its patents: U.S. Patent No. 5,945,730 ("the
'730 Patent"), "which concerns semiconductor power devices," and U.S. Patents Nos.

---

[1] By order filed July 3, 2012, the Court deemed the matter appropriate for decision
on the parties' respective filings and vacated the hearing scheduled for July 6, 2012.

7,095,281 ("the 281 Patent"), 5,402,017 ("the '017 Patent") and 6,621,343 ("the '343 Patent"), "which concern devices for amplifying electrical signals."  (See id. ¶ 2.)  Infineon further asserts Volterra has known about its patents as of at least January 21, 2010, when Infineon filed its original Complaint.  (See id. ¶¶ 28, 48, 80, 100.)

Infineon alleges Volterra directly infringes the asserted patents by selling its infringing products to its customers in the United States.  (See id. ¶¶ 20, 40, 72, 92.) Infineon also alleges Volterra indirectly infringes its patents by encouraging its customers to incorporate Volterra's infringing products into their own infringing products (see id. ¶¶ 27-34, 47-54, 79-86, 99-106), and, in addition, by providing its customers with products that are solely designed to practice the claimed inventions when used by those customers (see id. ¶¶ 59-66, 111-118).

**LEGAL STANDARD**

**I. Motion to Dismiss**

Dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.  See Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).  Rule 8(a)(2), however, "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'"  See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)).  Consequently, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations."  See id. Nonetheless, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  See id. (internal quotation, citation, and alteration omitted).

In analyzing a motion to dismiss, a district court must accept as true all material allegations in the complaint, and construe them in the light most favorable to the nonmoving party.  See NL Industries, Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986). "To survive a motion to dismiss, a complaint must contain sufficient factual material, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal,

2

1   129 S. Ct. 1937, 1949 (2009) (quoting <u>Twombly</u>, 550 U.S. at 570).  "Factual allegations

2   must be enough to raise a right to relief above the speculative level[.]"  <u>Twombly</u>, 550 U.S.

3   at 555.  Courts "are not bound to accept as true a legal conclusion couched as a factual

4   allegation."  <u>See Iqbal</u>, 129 S. Ct. at 1950 (internal quotation and citation omitted).

5   **II.  Motion for a More Definite Statement**

6           A motion for a more definite statement under Rule 12(e) "is only appropriate where

7   the complaint is so indefinite that the defendant cannot ascertain the nature of the claim

8   being asserted."  <u>See Wood v. Apodaca</u>, 375 F. Supp. 2d 942, 949 (N.D. Cal. 2005).  The

9   motion "attacks unintelligibility in a pleading, not mere lack of detail."  <u>See id.</u>  Moreover,

10  "[i]f the detail sought by a motion for a more definite statement is obtainable through

11  discovery, the motion should be denied."  <u>Beery v. Hitatchi Home Elecs. (America), Inc.</u>,

12  157 F.R.D. 477, 480 (C.D. Cal. 1993).

13                                      **DISCUSSION**

14  **I.  Direct Infringement**

15          **A.  Motion to Dismiss**

16          In the FAC, Infineon identifies, by model number, a specific infringing Volterra

17  product for each asserted patent, but further alleges Volterra infringes the patents by

18  selling unidentified "other products."  (<u>See</u> FAC ¶¶ 20, 40, 72, 92.)  Volterra argues such

19  pleading is insufficient under Rule 8 of the Federal Rules of Civil Procedure because

20  Volterra "cannot determine in a meaningful way from the First Amended Complaint which of

21  the over 100 separate Volterra products are being accused of infringement."  (<u>See</u> Mot. at

22  7:16-17.)  Volterra further argues that Infineon, in order to satisfy Rule 8, "should identify

23  the specific circuits that are alleged to infringe its patents, and state all of the products in

24  which those circuits may be located, or at least identify them in a meaningful way."  (<u>See id.</u>

25  at 7:23-25.)

26          In response, Infineon relies on the Appendix of Forms to the Federal Rules of Civil

27  Procedure, specifically, Form 18, an approved model complaint for asserting a claim of

28  patent infringement.  <u>See</u> Fed. R. Civ. P. 84 (providing "[t]he forms in the Appendix suffice

                                              3

1  under these rules and illustrate the simplicity and brevity that these rules contemplate").  In

2  a recent opinion, the Federal Circuit, after considering the potential effect of Twombly and

3  Iqbal on its prior holdings, again held Form 18 embodies the degree of specificity required

4  for pleading a claim of direct infringement.  See In re Bill of Lading Transmission and

5  Processing System Patent Litig., 681 F.3d 1323, 1334 (Fed. Cir. 2012) (holding whether

6  complaint "adequately plead[s] direct infringement is to be measured by the specificity

7  required by Form 18").[2]

8      Here, as Infineon points out, the FAC provides detail beyond that required by Form

9  18.  Whereas Form 18 identifies only a general category of infringing products, "electric

10 motors," see Fed. R. Civ. P. Form 18, Infineon, as to each of the subject patents, has

11 identified by model number one such product (see FAC ¶ 20 (identifying VT1195SF as

12 infringing product), ¶ 40 (identifying VT1115MF as infringing product), ¶ 72 (identifying

13 VT1115MF as infringing product), ¶ 92 (identifying VT1195SF as infringing product)).

14 Additionally, whereas Form 18 alleges infringement in general terms, without identifying

15 any specific patent claim, Infineon goes further and identifies the specific patent claims

16 Volterra is alleged to infringe.  See FAC ¶ 21 (alleging infringement of Claim 1 of '730

17 Patent), ¶ 41 (alleging infringement of Claim 15 of '281 Patent), ¶ 73 (alleging infringement

18 of Claim 1 of '017 Patent), ¶ 93 (alleging infringement of Claim 1 of '343 Patent).)[3]

19     Consequently, to the extent Infineon's direct infringement claims are based on the

20 above-referenced products, the FAC provides, at a minimum, the specificity required by

21 Form 18.  To the extent, however, the FAC includes, in addition, references to infringement

22 by "other products" (see e.g., FAC at 5:12), the FAC fails to meet that standard.  See, e.g.,

23 Winstrom v. Phillip M. Adams Associates, LLC, 2011 WL 4079231 (N.D. Cal. Sept. 12,

24

25          [2] On August 8, 2012, rehearing en banc was denied.

26          [3] Volterra's argument that it is entitled to know which specific circuitry within said
   products assertedly infringes is more appropriately addressed in the course of discovery
27 conducted under the Patent Local Rules of this district.  See, e.g., Patent L.R. 3-1, 4-1.
   Indeed, a motion challenging the sufficiency of Infineon's Infringement Contentions is
28 currently pending before Magistrate Judge Donna M. Ryu, and is scheduled to be heard on
   September 27, 2012, (see Doc. No. 107).

2011) (finding "clearly inadequate" plaintiff's allegation of infringement based on "other products").

Accordingly, to the extent Count I (Direct Infringement of U.S. Patent No. 5,945,730), Count III (Direct Infringement of U.S. Patent No. 7,095,281), Count VI (Direct Infringement of U.S. Patent No. 5,402,017), and Count VIII (Direct Infringement of U.S. Patent No. 6,621,343) are based on the above-referenced specified products, Volterra's motion to dismiss will be denied, and to the extent said counts are based on references to "other products," the motion will be granted.

**B. Motion for More Definite Statement**

As noted, Volterra moves, in the alternative, for a more definite statement, and, as further noted, a motion for a more definite statement is appropriate where the complaint is "so indefinite that the defendant cannot ascertain the nature of the claim being asserted." See Wood, 375 F. Supp. 2d at 949. Here, as discussed above, Infineon has pleaded sufficiently definite claims of direct infringement based on adequately identified products, and to the extent such claims are based on products that are inadequately identified, the claims will be dismissed.

Accordingly, Volterra's motion for a more definite statement will be denied.

**II. Indirect Infringement**

**A. Induced Infringement**

"Whoever actively induces infringement of a patent shall be liable as an infringer." 35 U.S.C. § 271(b). "In order to prevail on an inducement claim, the patentee must establish . . . that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement." See ACCO Brands, Inc. v. ABA Locks Mfg. Co., Ltd., 501 F.3d 1307, 1312 (Fed. Cir. 2007). The alleged infringer must have "knowledge that the induced acts constitute patent infringement." See Global-Tech Appliances, Inc. v. SEB S.A., 131 S.Ct. 2060, 2068 (2011). An accused infringer has the requisite "knowledge" if it is "willfully blind," meaning it "takes deliberate actions to avoid confirming a high probability of wrongdoing." See id. at 2070.

5

1    Volterra argues Infineon has provided insufficient factual allegations to establish

2   knowledge of infringement, because, according to Volterra, Infineon has provided only the

3   conclusory allegation that "Volterra knew that . . . activity by its customers directly infringed

4   the patent[s], or was willfully blind to the fact that . . . activity by its customers directly

5   infringed the patents."  (See FAC ¶¶ 30, 50, 82, 103.)

6    In Bill of Lading, the Federal Circuit provided guidance as to the pleading

7   requirements for indirect infringement by inducement.  See Bill of Lading, 681 F.3d at 1323.

8   In that regard, the Federal Circuit held the review of such claims must be undertaken "in

9   the context of the technology disclosed in the [asserted] patent and the industry to which

10  [the accused infringers] sell and tout their products."  See id. at 1340.  In finding the plaintiff

11  therein had adequately stated a claim for induced infringement, the Federal Circuit

12  considered the plaintiff's allegations describing the defendants' communications with

13  customers, found the defendants' statements regarding the benefits of their products

14  closely resembled the benefits of the method disclosed in the patent, concluded a

15  reasonable inference could be drawn that the defendants intended their customers to

16  infringe, and held that the plaintiff had stated a claim for induced infringement.  See id. at

17  1341-46.  In so holding, the Federal Circuit further explained "there is no requirement that

18  the facts alleged mimic the precise language used in a [patent] claim; what is necessary is

19  that facts, when considered in their entirety and in context, lead to the common sense

20  conclusion that a patented method is being practiced."  Id. at 1343.

21   Here, Infineon identifies the latest date, as well as the manner, by which Volterra

22  allegedly became aware of each of the asserted patents (see FAC ¶¶ 28, 48, 80, 100),

23  namely, the date of Infineon's Complaint, and further alleges Volterra induced its customers

24  to infringe "after gaining knowledge of the [asserted] patent[s]" (see id. ¶¶ 29, 49, 81, 101).

25  In support thereof, the FAC includes numerous allegations quoting Volterra's statements to

26  its customers, from which allegations a reasonable inference can be drawn that Volterra

27  intended to induce its customers to infringe.

28

1    For example, as alleged in the FAC, the '730 Patent describes a semiconductor
2  "power device" that is "useful in applications requiring the integration of logic and power
3  devices on the same chip" (FAC Ex. A at 4:50-57), and that allows "higher current
4  applications at the same power dissipation level (or transistor area) or . . . lower power
5  dissipation requiring smaller packaging" (id. at 1:23-27).  As further alleged, Volterra
6  advertises its "power management semiconductors" on its website, stating Volterra has
7  "integrated power, analog and digital circuits onto a single complementary metal oxide
8  silicon . . . semiconductor" (FAC ¶ 7), that its products have a "small form factor" and "take
9  up considerably less space than conventional power management solutions" (id. ¶ 9), and
10 that its products "operate at much higher speeds . . . without excessive power dissipation"
11 (id. ¶ 10).

12    As alleged in the FAC, the '281 Patent describes a "differential amplifier
13 arrangement" that provides a "highly space-saving" design (FAC Ex. B at 2:20-22, 2:57-59)
14 and "an improved signal/noise ratio even in conjunction with a relatively small chip area"
15 (id. at 2:21-22), and "can be combined with further circuits in a simple manner" (id. at 6:22-
16 28).  As further alleged, Volterra, on its website, advertises its products as "tak[ing] up
17 considerably less space than conventional power management solutions while offering
18 increased performance and functionality" (FAC ¶ 9), and further states that Volterra has
19 "integrated power, analog and digital circuits [on] a single . . . semiconductor" (id. ¶ 7), and
20 that its "proprietary system architecture integrates the functions of controllers, power
21 transistors and drivers found in conventional solutions" (id. ¶ 9).

22    The '017 Patent, as alleged in the FAC, describes a "controllable circuit
23 configuration for compensating fluctuations in an amplifier" that has "advantages" that
24 include "the capability of complete integration . . . and the possibility of software control"
25 (FAC Ex. C at 2:9-13), that has a "final control element" and "current source" that are
26 "integrated into a single circuit" (id. at 2:37-49), and that can provide "not only the low
27 overall cost for circuitry but also . . . the ability to make an analog bus system at low
28 expense" (id. at 2:9-13).  As further alleged, Volterra, on its website, states its products

"measure and report vital power system information accurately because [Volterra] integrate[s] measurement and control functions together with power delivery circuitry on the same semiconductor" (FAC ¶ 13), and also that its products "reduce the complexity, time and cost of system design" (FAC ¶ 12).

Lastly, the '343 Patent, as alleged in the FAC, describes "a fully integrated, fast open-loop variable gain amplifier with independent control" (FAC Ex. D at 4:46-50) that features an "architecture which avoids complex circuitry such as operational amplifiers, switches and gain-setting resistors in the signal path" (id. at 4:51-54), and further features a "high speed and high bandwidth" design that "increas[es] signal speed" (id. at 4:46-54, 11:1-5), and provides for "precise" measurements, thus "render[ing] the gain control insensitive to process, temperature and supply voltage variations" (id. at 5:8-14).  As further alleged, Volterra states on its website that its "proprietary system architecture integrates the functions of controllers, power transistors, and drivers found in conventional solutions, and significantly reduces the quantity and size of the remaining external components" (FAC ¶ 9), and that its products "operate at much higher speeds than conventional power management solutions" (FAC ¶ 10), and "measure and control voltages and currents, and are generally more precise than conventional solutions" (FAC ¶ 10).

Given the above factual allegations setting forth the similarities between the patent claims and the advertised features of the Volterra products, a reasonable inference can be drawn that Volterra intended to induce customers to infringe.  "That alternative inferences from those facts [are] also reasonable [does] not render the complaint deficient."  See Bill of Lading, 681 F.3d at 1340.

Accordingly, Volterra's motion will be denied as to Count II (Indirect Infringement of U.S. Patent No. 5,945,730 (Inducement)), Count IV (Indirect Infringement of U.S. Patent No. 7,095,281 (Inducement)), Count VII (Indirect Infringement of U.S. Patent No. 5,402,017 (Inducement)), and Count IX (Indirect Infringement of U.S. Patent No. 6,621,343 (Inducement)).

1

### B. Contributory Infringement

2     As to the '281 Patent and the '343 Patent, Infineon also alleges a claim for

3 contributory infringement.  A defendant is liable for contributory infringement where such

4 defendant "offers to sell or sells within the United States or imports into the United States a

5 . . . material or apparatus for use in practicing a patented process, constituting a material

6 part of the invention, knowing the same to be especially made or especially adapted for use

7 in an infringement of such patent, and not a staple article or commodity of commerce

8 suitable for substantial noninfringing use."  See 35 U.S.C. § 271(c).  "Contributory

9 infringement imposes liability on one who embodies in a non-staple device the heart of a

10 patented process and supplies the device to others to complete the process and

11 appropriate the benefit of the patented invention."  See Vita-Mix Corp. v. Basic Holding,

12 inc., 581 F.3d 1317, 1327 (Fed. Cir. 2009).

13     Here, Infineon alleges that "Volterra knowingly and intentionally designs, develops

14 and markets its infringing products for the computing, storage, networking and consumer

15 markets" (FAC ¶¶ 63, 115 (internal quotations omitted)), "knows that the infringing Volterra

16 products are subsequently incorporated into the infringing products of its customers" (id.),

17 and, as a result, when Volterra's customers sell their products, Volterra has "contribut[ed]

18 to the infringement by its customers and end users" (id. ¶ 66).

19     Volterra argues Infineon has failed to allege facts sufficient to give rise to an

20 inference that Volterra acted with the requisite intent to contribute to its customers' alleged

21 infringement.  As discussed, by alleging both Volterra's awareness of the subject patents

22 and the representations made by Volterra to its customers, Infineon has alleged a factual

23 basis sufficient to support an inference that Volterra acted with the intent to aid direct

24 infringement by its customers.

25     Volterra further argues Infineon's allegations in the FAC effectively concede the

26 VT1115MF and VT1195SF products have "substantial non-infringing uses" such that

27 Infineon has failed to state a claim for contributory infringement.  Specifically, Volterra

28 argues, Infineon's allegations that the VT1195SF infringes Claim 1 of the '730 Patent, and

9

that the VT1115MF infringes Claim 1 of the '017 Patent, establish those products have "substantial uses that are non-infringing with respect to the asserted patents that are allegedly contributorily infringed."  (See Reply at 14:14-16.)  Volterra, however, has cited no authority holding uses that infringe other patents are "non-infringing," and, indeed, in addition to the language of the applicable statute itself, relevant authority would suggest the contrary.  See Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd., 545 U.S. 913, 942 (holding sale of product "does not constitute contributory infringement if the product is widely used for legitimate, unobjectionable purposes") (emphasis added) (internal quotation and citation omitted).

Accordingly, Volterra's motion will be denied as to Count V (Indirect Infringement of U.S. Patent No. 7,095,281 (Contributory Infringement)) and Count X (Indirect Infringement of U.S. Patent No. 6,621,343 (Contributory Infringement)).

**CONCLUSION**

For the reasons stated, Volterra's Motion to Dismiss is hereby GRANTED in part and DENIED in part as follows:

To the extent Counts I, III, VI, and VIII are based on alleged infringement by "other products," the motion is hereby GRANTED; in all other respects the motion is hereby DENIED.

Infineon's Second Amended Complaint, if any, shall be filed no later than October 5, 2012.

**IT IS SO ORDERED.**

Dated: September 10, 2012

_____
MAXINE M. CHESNEY
United States District Judge

10