UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| INFINEON TECHNOLOGIES,<br><br>    Plaintiff(s),<br><br>  v.<br><br>VOLTERRA SEMICONDUCTOR,<br><br>    Defendant(s).<br>_____/ | No. C 11-6239 MMC (DMR)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO STRIKE, AND STAYING DISCOVERY**<br><br>*Public Version* |

Defendant Volterra Semiconductor Corporation moves to strike Plaintiff Infineon Technologies AG's Amended Infringement Contentions ("AICs"), and to stay or limit further discovery pending Plaintiff's provision of infringement contentions that comply with the Court's Local Rules. The court held a hearing on September 27, 2012. For the following reasons, the court grants the motion in part and denies it in part, and grants Plaintiff leave to file Second Amended Infringement Contentions. The court also stays discovery until 30 days after Plaintiff produces infringement contentions that conform to the Court Rules or the court resolves any related motions, whichever is later.

## I. Background

Plaintiff filed this patent infringement suit on January 21, 2010 and amended its complaint on May 18, 2012. [Docket Nos. 1, 86.] During the pendency of this motion, Judge Chesney issued an order granting in part and denying in part Defendant's motion to dismiss. [Docket No. 125.] Of

relevance here, that order held that Plaintiff could bring direct infringement claims based upon only Defendant's products specifically named in the Amended Complaint, i.e. the VT1195SF and VT1115MF. [Docket No. 125 at 4-5.][1]

On June 4, 2012, Plaintiff served its Infringement Contentions on Defendant. [Docket No. 96 at 1.] Defendant moved to strike Plaintiff's Infringement Contentions and stay discovery on July 6, 2012. [Docket No. 96.] Three days later, Plaintiff filed a motion to strike Defendant's motion to strike, along with a motion to shorten time to hear its motion. [Docket Nos. 98, 99.] The Hon. Maxine M. Chesney referred these motions to the undersigned on July 11, 2012. [Docket No. 101.] The court denied Defendant's motion without prejudice and Plaintiff's motions as moot on July 16, 2012, and ordered the parties to meet and confer in the courthouse to resolve their infringement contention disputes. [Docket No. 103.] The court also ordered Plaintiff to serve revised infringement contentions by August 6, 2012 and granted Defendant until August 13, 2012 to challenge the revised version. [Docket No. 103.]

After Plaintiff served its Amended Infringement Contentions, Defendant renewed its motion to strike, which is currently before the court. [Docket No. 107.] Defendant presents four arguments: (1) that the AICs do not sufficiently specify which of Defendant's products, in addition to the fifteen that it names in the AICs, allegedly infringe on Plaintiff's patents;[2] (2) that the AICs

---

[1] On September 26, 2012, the day before the hearing on this dispute, Plaintiff filed its Second Amended Complaint ("SAC"), which asserts ten causes of action: (1) direct infringement pursuant to 35 U.S.C. § 271(a) of U.S. Patent No. 5,945,730 ("the '730 patent") by Defendant's VT237WFQ, VT238AWFQ, VT239WFQ, VT271SFQ, VT1156SFQ, VT1157SFQ, VT1165SFQ, VT1175SFQ, VT1185SFQ, VT1188SFQ, VT1189SFQ, VT1195SFQ, VT1195-001SFQ, VT1196SFQ, and VT1198SFQ products; (2) inducement of infringement of the '730 patent pursuant to § 271(b); (3) direct infringement pursuant to § 271(a) of U.S. Patent No. 7,095,281 ("the '281 patent") by Defendant's VT 1115MF product; (4) inducement of infringement of the '281 patent pursuant to § 271(b); (5) contributory infringement of the '281 patent pursuant to § 271(c); (6) direct infringement pursuant to § 271(a) of U.S. Patent No. 5,402,017 ("the '017 patent") by Defendant's VT 1115MF product; (7) inducement of infringement of the '017 patent pursuant to § 271(b); (8) direct infringement pursuant to § 271(a) of U.S. Patent No. 6,621,343 ("the '343 patent") by Defendant's VT 1195SF product; (9) inducement of infringement of the '343 patent pursuant to § 272(b); and (10) contributory infringement of the '343 patent pursuant to § 271(c). (*See* 2d Am. Compl. ¶¶ 18-121.) As explained in footnote 4, the newly identified products in the Second Amended Complaint are not reached in this opinion.

[2] Because Plaintiff's SAC now specifies that the same fifteen products mentioned in Plaintiff's AICs, and no others, (*compare* 2d Am. Compl. ¶ 20, *with* Morando Decl. Ex. C. App. A at 1, Aug. 13, 2012), directly infringe upon the '730 patent, Defendant's first argument is moot, and the court therefore does not address it.

2

impermissibly contain a single claim chart ("the Chart") -- for Defendant's VT1195SFQ product -- to represent fifteen allegedly infringing products; (3) that the Chart "remain[s] entirely vague and unclear with respect to what specifically it is in the structure of the VT1195SFQ that [Plaintiff] claims meets critical claim elements"; and (4) that the AICs do not provide "the specifics" with respect to the doctrine of equivalents. (Mot. Strike 1-2 (emphasis removed).) Defendant also requests that the court stay discovery, including Defendant's deadline for submitting invalidity contentions, until Plaintiff produces infringement contentions that comply with the Court rules. (Mot. Strike 3.)

## II. The Claim Chart's Compliance with Patent Local Rule 3-1

### A. Applicable Law

The Court's Patent Local Rules aim to "make the parties more efficient, to streamline the litigation process, and to articulate with specificity the claims and theory of a plaintiff's infringement claims." *Bender v. Maxim Integrated Prods., Inc.*, No. 09-1152 SI, 2010 WL 1135762, at *2 (N.D. Cal. Mar. 22, 2010) (citation and quotation marks omitted). Specifically, Patent Local Rule 3-1 is a discovery device that sets forth the standards for disclosing asserted claims and infringement contentions. It "takes the place of a series of interrogatories that defendants would likely have propounded had the patent local rules not provided for streamlined discovery." *Intertrust Techs. Corp. v. Microsoft Corp.*, No. 01-1640 SBA, 2003 WL 23120174, at *1 (N.D. Cal. Dec. 1, 2003) (citation and quotation marks omitted); *accord Bender v. Freescale Semiconductor, Inc.*, No. 09-1156 PHJ (MEJ), 2010 WL 1689465, at *2 (N.D. Cal. Apr. 26, 2010). The Rule requires that infringement contentions present "'each claim of each patent in suit that is allegedly infringed by each opposing party' and identify for each asserted claim 'each accused apparatus, product, device, process, method, act or instrumentality ("Accused Instrumentality") . . . of which the party is aware.'" *Bender*, 2010 WL 1689465, at *2 (ellipses in original) (quoting N.D. Cal. Patent L.R. 3-1(a), (b)). Pursuant to subsection (c), the infringement contentions also must contain "a 'chart identifying specifically where each limitation of each asserted claim is found within each Accused Instrumentality.'" *Id.* (quoting N.D. Cal. Patent L.R. 3-1(c)); *accord Shared Memory Graphics, LLC v. Apple, Inc.*, No. 10-2475 MMC (JSC), 2011 WL 3878388, at *5 (N.D. Cal. Sept. 2, 2011);

*Bender*, 2010 WL 1135762, at *2 (holding that, under Patent Local Rule 3-1(c), plaintiff must "compare an accused product to its patents on a claim by claim, element by element basis for . . . defendant's products") (citation and quotation marks omitted); *Intertrust Techs. Corp.*, 2003 WL 23120174, at *2 (same). Taken together, Patent Local Rule 3-1 mandates that a plaintiff's infringement contentions "must be sufficient to provide reasonable notice to the defendant why the plaintiff believes it has a reasonable chance of proving infringement" and "to raise a reasonable inference that all accused products infringe." *Shared Memory Graphics, LLC*, 2011 WL 3878388, at *4 (citations and quotation marks omitted); *accord Shared Memory Graphics, LLC v. Apple, Inc.*, 812 F. Supp. 2d 1022, 1025 (N.D. Cal. 2010) (citing *Antonious v. Spalding & Evenflo Cos., Inc.*, 275 F.3d 1066, 1075 (Fed. Cir. 2002); *View Eng'g, Inc. v. Robotic Vision Sys., Inc.*, 203 F.3d 981, 986 (Fed. Cir. 2000)).

**B. Discussion**

Plaintiff's claim chart, which identifies the limitations for Claims 1-8 of the '730 patent in the VT1195SFQ, does not comply with Patent Local Rule 3-1(c). In particular, the portions of the Chart that elucidate the alleged infringement of Claim 1,[3] (Morando Decl. Ex. C App. A at 4-55, Aug. 13, 2012), do not achieve the specificity mandated by the Rule. The explanation of how Defendant's product contains "a plurality of first metal conductors coupled to the first semiconductor region" equivocates on the limitation's location in the VT1195SFQ:

> [Plaintiff] contends that the portions [[          ]] of the VT1195SFQ identified above literally meet the "a plurality of first metal conductors coupled to the first

---

[3] Claim 1 of the '730 patent consists of the following:
1. A semiconductor power device comprising: first and second semiconductor regions,
    a plurality of first metal conductors coupled to the first semiconductor region, each of the plurality of first metal conductors having at least one bump in contact therewith,
    a plurality of second metal conductors coupled to the second semiconductor region, each of the plurality of second metal conductors having at least one bump in contact therewith, and
    a frame formed of high conductivity material, the frame comprising a plurality of first connection portions for connecting to the at least one bumps of the first metal conductors and a plurality of second connection portions for connecting to the at least one bumps of the second metal conductors, the frame providing external connections to the semiconductor regions of the device.
(Morando Decl. Ex. A ('730 patent) at 9.)

4

> semiconductor region" limitation of this claim. *If [Defendant] argues that the VT119SFQ includes [[         ]], [Plaintiff] contends that the combined structure [[            ]] would also literally meet the "a plurality of first metal conductors coupled to the first semiconductor region" limitation of this claim.*

(Morando Decl. Ex. C. App. A at 14 (emphasis added).)  The explanation for "a plurality of second metal conductors coupled to the second semiconductor region" tracks this same language:

> [Plaintiff] contends that the portions [[              ]] of the VT1195SFQ identified above literally meet the "a plurality of second metal conductors coupled to the second semiconductor region" limitation of this claim. *If [Defendant] argues that the VT119SFQ includes [[            ]], [Plaintiff] contends that the combined structure [[          ]] would also literally meet the "a plurality of second metal conductors coupled to the second semiconductor region" limitation of this claim.*

(Morando Decl. Ex. C. App. A at 27 (emphasis added).)  Plaintiff's analyses of "bumps" in the first and second semiconductor regions contain a similar description:

> [Plaintiff] contends that [[           ]] the VT1195SFQ identified above literally meet the "bumps" limitation of this claim. *If [Defendant] argues that the VT119SFQ includes [[         ]], [Plaintiff] contends that the combined structure [[     ]] would also literally meet the "bumps" limitation of this claim.*

(Morando Decl. Ex. C. App. A at 22, 35 (emphasis added).)  And so does its analyses of the "in contact" limitations for the first and second semiconductor regions:

> [Plaintiff] contends that [[    ]] the VT1195SFQ are literally "in contact" with the plurality of first metal conductors. *If [Defendant] argues that the VT119SFQ includes [[          ]] [Plaintiff] contends that [[        ]] would literally be "in contact" with the plurality of the first metal conductors as recited in this claim.*

(Morando Decl. Ex. C. App. A at 23 (emphasis added).)

> [Plaintiff] contends that [[             ]] the VT1195SFQ are literally "in contact" with the plurality of second metal conductors. *If [Defendant] argues that the VT119SFQ includes [[         ]], [Plaintiff] contends that [[             ]] would literally be "in contact" with the plurality of the second metal conductors as recited in this claim.*

(Morando Decl. Ex. C. App. A at 36 (emphasis added).)

In this manner, Plaintiff repeatedly attempts to hedge its bets.  For each of these limitations, Plaintiff first articulates a theory of infringement (e.g., the infringing portion of the accused product involves [[           ]]), then tries to cover its bases by articulating a second theory that is wholly contingent on the position that might be taken by Defendant (e.g.,. if Defendant argues that there are [[           ]], then the infringing portion of the accused product involves [[           ]]).  Rule 3-1 requires a patent plaintiff to forthrightly set forth the specifics of its infringement contention.

1 Plaintiff's "contingent" formulation obfuscates the exact substance of Plaintiff's allegations and does
2 not "'crystallize [Plaintiff's] theories of the case,'" as Rule 3-1 commands. *Network Caching Tech.,*
3 *LLC*, 2003 WL 21699799, at *4 (quoting *LG Elecs., Inc. v. Q-Lity Computer, Inc.*, 211 F.R.D. 360,
4 367 (N.D. Cal. 2002)).  Under Rule 3-1(c), Plaintiff may not craft its infringement contentions
5 "without *specifically identifying what in the device satisfies the limitation*." *Shared Memory*
6 *Graphics, LLC*, 2011 WL 3878388, at *6 (emphasis added) (citation omitted).  It must "identify[]
7 *specifically* where each limitation of each asserted claim is found within" the VT1195SFQ, N.D.
8 Cal. Patent L.R. 3-1(c) (emphasis added), which necessitates a level of detail that reverse
9 engineering or its equivalent would provide. *Rambus, Inc. v. NVIDIA Corp.*, No. 08-3343 SI, slip
10 op. at 10 (N.D. Cal. Aug. 24, 2011); *see Implicit Networks, Inc. v. HP Co.*, No. 10-3746 SI, 2011
11 WL 3954809, at *3 (N.D. Cal. Sept. 7, 2011); *Network Caching Tech., LLC*, 2003 WL 21699799, at
12 *4.  Plaintiff reverse-engineered the accused product and presumably knows whether the allegedly
13 infringing portion has [[         ]].  It must now take a specific position on its theory of
14 infringement, as is required by Rule 3-1.  If Plaintiff articulates a theory that later proves to be
15 flawed, Plaintiff's recourse is through amendment upon a timely showing of good cause. N.D. Cal.
16 Patent L.R. 3-6.     Because the current Chart does not comply with the requirements of Rule 3-1, the
17 court finds it deficient and grants Plaintiff leave to amend.[4]

### III. Plaintiff's Doctrine of Equivalents Contentions

#### A. Applicable Law

The doctrine of equivalents holds that "'a product or process that does not literally infringe upon [sic] the express terms of a patent claim may nonetheless be found to infringe if there is 'equivalence' between the elements of the accused product or process and the claimed elements of the patented invention.'" *Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp.*, 149 F.3d 1309, 1315 (Fed. Cir. 1998) (brackets in original) (quoting *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 21 (1997)).  A finding of infringement under the doctrine may occur "if every

---

[4] Because Plaintiff's claim chart for the VT1195SFQ is not in accordance with law, the court at this time does not reach the issue of whether the Chart also is representative of the fourteen other products recently identified in the Second Amended Complaint.  The AICs are also deficient to the extent that the remaining disputed claims are all dependent upon Claim 1.

1    limitation of the asserted claim, or its 'equivalent,' is found in the accused subject matter, where an
2    'equivalent' differs from the claimed limitation only insubstantially." *Id.*; *see Dawn Equip. Co. v.*
3    *Ky. Farms, Inc.*, 140 F.3d 1009, 1015 (Fed. Cir. 1998) ("[T]o establish infringement under the
4    doctrine of equivalents, the accused device must be shown to include an equivalent for each literally
5    absent claim limitation."). The claim chart of a party asserting the doctrine must provide "an
6    element-by-element explanation of why and how" the doctrine applies. *Implicit Networks, Inc.*,
7    2011 WL 3954809, at *3.

### B. Discussion

Plaintiff's invocation of the doctrine of equivalents for several limitations of Claim 1 of the '730 patent comport with case law and the Patent Local Rules. In its analyses for the "a plurality of first metal conductors coupled to the first semiconductor region" and "a plurality of second metal conductors coupled to the second semiconductor region" elements, Plaintiff respectively explains that the manner in which possible [[         ]] of the VT1195SFQ would perform the same function – [[         ]] – to the substantially same effect – [[         ]] as would the single metal conductor. (Morando Decl. Ex. C. App. A at 14, 27.) Similarly, Plaintiff's "bumps" analyses state that possible [[         ]] "would still perform the same function of providing [[         ]]" through the use of [[         ]] as would [[         ]]. (Morando Decl. Ex. C App. A at 22, 35.) Finally, the analyses for the "in contact" elements contend that any [[         ]] that may exist [[         ]] would create only insubstantial differences because [[         ]] (Morando Decl. Ex. C App. A at 23, 36.) Each of these contentions alleges how each element not literally present in the VT1195SFQ has an equivalent that insubstantially differs from the elements set forth in the '730 patent.

Defendant's argument that Plaintiff has failed to identify the infringing parts of the VT1195SFQ in Plaintiff's doctrine of equivalents allegations lacks merit. Plaintiff's language is undoubtedly convoluted and cumbersome, but close examination of these allegations, in conjunction with Plaintiff's literal contentions, clarifies which parts of the VT1195SFQ Plaintiff invokes in its doctrine of equivalents arguments. Because Plaintiff has presented proper doctrine of equivalents

7

contentions, the court denies Defendant's request to strike them. However, the court grants Plaintiff leave to amend the contentions to conform with this order.

### IV. Discovery

Courts generally will stay a patent defendant's discovery obligations "[u]ntil [the] plaintiff meets the burden of providing infringement contentions compliant with Patent L.R. 3-1." *Bender*, 2010 WL 1135762, at *2; *accord Implicit Networks, Inc.*, 2011 WL 3954809, at *4; *see Shared Memory Graphics, LLC*, 2011 WL 3878388, at *7 (citation omitted). Accordingly the court stays discovery from Defendant, including service of invalidity contentions, until 30 days after Plaintiff serves its revised Infringement Contentions or the court resolves any related motions, whichever is later.

### V. Conclusion

For the reasons provided above, the court grants Defendant's motion in part and denies it in part. The court finds Plaintiff's Amended Infringement Contentions' claim chart for the VT1195SFQ's alleged infringement of the '730 patent deficient and grants Plaintiff leave to amend. Plaintiff's doctrine of equivalents contentions are sufficient as stated. The court nevertheless grants Plaintiff leave to amend the non-deficient portions of its Amended Infringement Contentions so that they conform to any revised claim chart it may submit, consistent with this order. Plaintiff shall serve its Second Amended Infringement Contentions by no later than November 2, 2012. The court stays discovery until 30 days after Plaintiff serves its Second Amended Infringement Contentions or the court resolves any related motions, whichever is later.

IT IS SO ORDERED.

Dated: October 3, 2012

_____
DONNA M. RYU
United States Magistrate Judge

8