1  DAVID G. WILLE (*Pro Hac Vice*) (TX Bar No. 08945388)
2  JEFFERY D. BAXTER (*Pro Hac Vice*) (TX Bar No. 24006816)
   AARON DAVIDSON (*Pro Hac Vice*) (TX Bar No. 24007080)
3  SAMIR A. BHAVSAR (*Pro Hac Vice*) (TX Bar No. 00798065)
   BAKER BOTTS L.L.P.
4  2001 Ross Avenue
   Dallas, Texas 75201
5  Telephone: (214) 953-6500
   Facsimile:  (214) 953-6503
6  E-mail: david.wille@bakerbotts.com
7  E-mail: jeff.baxter@bakerbotts.com
   E-mail: aaron.davidson@bakerbotts.com
8  E-mail: samir.bhavsar@bakerbotts.com

9  STEPHEN E. TAYLOR (SBN 058452)
   JONATHAN A. PATCHEN (SBN 237346)
10 CHRISTOPHER A. WIMMER (SBN 263275)
11 TAYLOR & COMPANY LAW OFFICES, LLP
   One Ferry Building, Suite 355
12 San Francisco, California 94111
   Telephone: (415) 788-8200
13 Facsimile:  (415) 788-8208
   E-mail: staylor@tcolaw.com
14 E-mail: jpatchen@tcolaw.com
15 E-mail: cwimmer@tcolaw.com

16 Attorneys for Plaintiff
   INFINEON TECHNOLOGIES AG
17

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| INFINEON TECHNOLOGIES AG, a German corporation,<br><br>Plaintiff,<br>vs.<br><br>VOLTERRA SEMICONDUCTOR CORPORATION, a Delaware corporation,<br><br>Defendant. | Case No. CV-11-06239 (MMC) (DMR)<br><br>**PLAINTIFF INFINEON'S OPPOSITION TO VOLTERRA'S MOTION TO DISMISS INFINEON'S SECOND AMENDED COMPLAINT**<br><br>Date:    November 16, 2012<br>Time:    9:00 a.m.<br>Dept.:    Courtroom 7, 19th Floor<br>Judge:   Honorable Maxine M. Chesney |

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................1

STATEMENT OF FACTS ....................................................................................................1

ARGUMENT .........................................................................................................................3

I. Infineon Properly Pled Patent Infringement in its Second Amended Complaint by Identifying a Category of Infringing Products.................................................................3

    A. Volterra Does Not Challenge Infineon's Identification of a Category of Infringing Products. ..........................................................................................3

    B. Given that Infineon Identified a Category of Infringing Products, Infineon Has No Obligation To Identify Any Products by Model Number..........................5

II. Volterra Falsely States That Infineon Has Extensive Knowledge of Volterra's Products That Enables Infineon to Easily Identify All Accused Products by Model Number. .............................................................................................................................5

    A. Volterra Restricts the Publicly Available Information on Its Products. ..................6

    B. Volterra Has Refused to Let Infineon Use the Datasheets and Other Documents That Volterra Produced in Judge Spero's Case...................8

III. Volterra's Request to Dismiss with Prejudice and Request to Strike the "Including Without Limitation" Language Are Improper Attempts to Prevent Infineon From Obtaining the Discovery to Which It Is Entitled. ...........................................................12

CONCLUSION....................................................................................................................15

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Advanced Micro Devices, Inc. v. Samsung Electronics Co.*,
   No. C 08-986 SI, 2009 WL 1834147, at *3 (N.D. Cal. June 24, 2009) ................................13

*Costello v. U. S.*,
   365 U.S. 265,284 (1961)...................................................................................................14

*Dr. Sys. Inc. v. Fujifilm Med. Sys. USA, Inc.*,
   No. 06cv417 JS (NLS), 2008 WL 1734241 (S.D. Cal. Apr. 10, 2008).............................13, 14

*Epicrealm, Licensing LLC v. Autoflex Leasing, Inc.*,
   Nos. 2:05-CV-163-DF-CMC and 2:05-CV-356-DF-CMC, 2007 WL 2580969 (E.D.
   Tex. Aug. 27, 2007) .........................................................................................................14

*EPOS Technologies v. Pegasus Technologies*,
   842 F. Supp. 2d 31 (D.D.C. 2012) ....................................................................................14

*Foltz v. State Farm Mut. Auto Ins. Co.*,
   331 F.3d 1122 (9th Cir. 2003) ........................................................................................6, 8

*Golden Eagle Distributing Corp. v. Burroughs Corporation*,
   809 F.2d 584 (9th Cir. 1987) .......................................................................................1, 2, 3

*Honeywell Int'l, Inc. v. Acer Am. Corp.*,
   655 F. Supp. 2d 650 (E.D. Tex. 2009)..............................................................................14

*In re Bill of Lading Transmission and Processing System Patent Litigation*,
   681 F.3d 1323 (Fed. Cir. 2012) .................................................................................1, 2, 3, 4, 6

*L.G. Philips LCD Co. Ltd. v. Tatung Co.*,
   No. C-07-80073WHA, 2007 WL 869256 (N.D. Cal. Mar. 20, 2007)...................................14

*L.G. Philips LCD Co. Ltd. v. Tatung Co.*,
   Nos. F-07-0009 EFB, S-07-0018 FCD EFB, 2007 WL 869700, (E.D. Cal Mar. 21,
   2007) ................................................................................................................................14

*Nuvo Research Inc. v. McGrath*,
   No. 11-CV-4006, 2012 WL 1965870 (N.D. Cal. May 31, 2012)............................................3

*O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*,
   467 F.3d 1355 (Fed Cir. 2006) .....................................................................................13, 14

*Phoenix Solutions, Inc. v. Wells Fargo Bank, N.A.*,
   254 F.R.D. 568 (N.D. Cal. 2008).......................................................................................12

*United States v. Jingles*,
    682 F.3d 811 (9th Cir. 2012) ..........................................................................................4

*Vasudevan Software, Inc. v. Int'l Business Machs. Corp.*,
    No. C 09-05897 RS (PSG), 2011 WL 1599646 (N.D. Cal. Apr. 27, 2011) ..............................12

*WebSideStory, Inc. v. Netratings, Inc.*,
    No. 06cv408 WQH (AJB), 2007 WL 1109597 (S.D. Cal. Apr. 11, 2007)................................14

**OTHER AUTHORITIES**

Fed. R. Civ. P. 26.................................................................................................................12, 14

L.R. 3-1 ............................................................................................................................5, 9, 13

L.R. 3-6 ....................................................................................................................................13

**EXHIBIT**

David Wille Declaration

A.  Trial Transcript, dated May 13, 2011

B.  E-mail from Jeff Fisher to David Wille (April 16, 2012, 08:34 CST)

C.  E-mail from James Morando to Samir Bhavsar (April 25, 2012, 10:05 CST)

D.  Sept. 7, 2012 Hearing Transcript

# INTRODUCTION

In ruling on Volterra's previous motion to dismiss, this Court correctly held that a patentee may plead infringement by identifying a general category of infringing products. Dkt. No. 125 at 4:1-10. Consistent with the Court's prior order, Infineon amended its complaint to identify a category of infringing products. In its Motion to Dismiss, Volterra does not raise any objection to Infineon's description of the category of infringing products in its Second Amended Complaint. Thus, based on the Court's prior order, Infineon's Second Amended Complaint satisfies the pleading requirements of the Federal Rules of Civil Procedure.

Volterra's Motion seemingly ignores this Court's prior order, the model Form 18, and case law concerning Form 18. Contrary to Volterra's contention that Infineon must identify the infringing products by model number, the Court has already held that a patentee may plead infringement by identifying a general category of infringing products and that identification of specific model numbers is not required. Dkt. No. 125 at 4:1-13. In its Motion, Volterra does not mention the Court's prior holdings. Volterra does not even cite or distinguish the legal authority on which the Court relied—namely, Form 18 and the Federal Circuit's holding in *In re Bill of Lading Transmission and Processing System Patent Litigation*, 681 F.3d 1323, 1334 (Fed. Cir. 2012). Thus, Volterra's Motion is in bad faith. *See Golden Eagle Distributing Corp. v. Burroughs Corporation*, 809 F.2d 584, 586 (9th Cir. 1987) (dissent from denial of rehearing en banc) ("An argument in the teeth of uncited and undistinguished contrary authority is not warranted by existing law. An argument that does not mention directly-contrary authority is not a good faith argument for its modification or reversal.").

# STATEMENT OF FACTS

On June 1, 2012, Volterra filed a motion to dismiss Infineon's First Amended Complaint. Dkt. No. 90. Volterra argued that Infineon did not sufficiently plead its allegations of direct infringement, inducement of infringement, and contributory infringement. Among other arguments, Volterra alleged that Infineon's First Amended Complaint should be dismissed because Infineon did not sufficiently identify the allegedly infringing circuits and products. *Id.* at 7.

Infineon opposed Volterra's motion to dismiss on all grounds. Dkt. No. 92. In response to Volterra's argument that Infineon did not sufficiently identify the allegedly infringing circuits and products, Infineon responded that it pled infringement in conformity with Form 18 in the Appendix of Forms included in the Federal Rules of Civil Procedure. *Id.* at 5-11. Relying on the Federal Circuit's decision in *Bill of Lading*, Infineon stated, "Whether a complaint in a patent case 'adequately plead[s] direct infringement is to be measured by the specificity required by Form 18.'" *Id.* at 7:8-10 (quoting *Bill of Lading*, 681 F.3d at 1334). Infineon argued that its complaint contained far greater detail than Form 18. *Id.* at 8-11.

This Court denied Volterra's motion to dismiss with respect to Infineon's claims for induced infringement and contributory infringement. Dkt. No. 125 at 5-10. This Court granted in part and denied in part Volterra's motion with respect to Infineon's claims for direct infringement. *Id.* at 4-5. In its opinion, this Court agreed with Infineon's arguments regarding Form 18 and *Bill of Lading*. This Court stated that, in *Bill of Lading*, the Federal Circuit "again held Form 18 embodies the degree of specificity required for pleading a claim of direct infringement." *Id.* at 4:1-7. Furthermore, this Court recognized that "Form 18 identifies only a **general category** of infringing products, 'electric motors.'" *Id.* at 4:9-10 (emphasis added). This Court ruled that Infineon's prior identification of products by model number "provides detail **beyond** that required by Form 18." *Id.* at 4:8-13 (emphasis added). Although this Court held that Infineon's reference to infringement by "other products" did not provide the specificity required by Form 18, the Court gave Infineon until October 5, 2012 to file a Second Amended Complaint. *Id.* at 4:21-5:8, 10:19-20.

On September 26, 2012, Infineon filed its Second Amended Complaint to identify a categories of infringing products in place of the references to "other products." In particular, with respect to U.S. Patent No 5,945,730, Infineon identified the category of infringing products as "integrated power fcQFN (flip-chip quad flat no-lead) products with two or more ground pins and two or more switching node pins." Dkt. No. 130 at ¶ 20.[1]

---

[1] With respect to the other patents-in-suit, Infineon also identified a category of infringing products. For the '281 and '017 Patents, Infineon identified Volterra's "master controller

Now, without addressing the relevant holdings in this Court's prior order, Form 18, or *Bill of Lading*, Volterra brings its Motion to Dismiss Infineon's Second Amended Complaint.

## ARGUMENT

**I.   Infineon Properly Pled Patent Infringement in its Second Amended Complaint by Identifying a Category of Infringing Products.**

**A.   Volterra Does Not Challenge Infineon's Identification of a Category of Infringing Products.**

Consistent with the Court's prior order, Infineon removed the references to "other products" and, for each asserted patent, specifically identified a category of infringing products in its Second Amended Complaint. Volterra does not raise any objection to Infineon's description of the category of infringing products.[2] Thus, the only issue before the Court is one that the Court has already decided—whether a patent infringement complaint can allege infringement against a category of products rather than against products enumerated by model number.

In its opinion on Volterra's prior motion to dismiss, this Court properly recognized that a patentee may plead infringement by identifying a general category of infringing products. Dkt. No. 125 at 4:1-10. This Court relied on Form 18 and the Federal Circuit's decision in *Bill of Lading*, which held that whether a complaint in a patent case "adequately plead[s] direct infringement is to be measured by the specificity required by Form 18." 681 F.3d at 1334. In particular, this Court stated that, in *Bill of Lading*, the Federal Circuit "again held Form 18 embodies the degree of specificity required for pleading a claim of direct infringement." Dkt. No.

---

products." Dkt. No. 130 at ¶ 40, 72. For the '343 Patent, Infineon identified Volterra's "integrated power stage products." *Id.* at ¶ 92. Because the proceedings as to those patents have been stayed pending resolution of Infineon's claims as to the '730 Patent, Infineon focuses on the '730 Patent in this opposition even though Infineon's arguments also apply to the other patents.

[2] In the introduction to its Motion, Volterra quotes Infineon's language describing the category of infringing products. Dkt. No. 136 at 2:23-24. However, Volterra does not address that language anywhere else in its Motion and certainly never argues that Infineon's category is less specific than Form 18's recitation of "electric motors." Indeed, Volterra's Motion does not mention Form 18 at all. Volterra also does not raise any objections to the other categories of products with respect to the other patents. Volterra has waived any objection to Infineon's description of the categories of infringing products, and should not be permitted to raise such an argument for the first time in its reply brief. *Nuvo Research Inc. v. McGrath*, No. 11-CV-4006, 2012 WL 1965870, at *5 (N.D. Cal. May 31, 2012) ("Because Defendant did not raise this argument in his moving papers (which would have enabled Plaintiffs to respond to it), it is not properly before the Court.") (denying motion to dismiss).

125 at 4:1-7. The Court also stated that "Form 18 identifies only a *general category* of infringing products, 'electric motors.'" *Id.* at 4:9-10 (emphasis added). Significantly, Form 18 does not identify any specific "electric motors," by model number or otherwise. Thus, the Court ruled that Infineon's prior identification of products by model number "provides detail *beyond* that required by Form 18." *Id.* at 4:8-13 (emphasis added). Although the Court held that Infineon's reference to infringement by "other products" did not provide the specificity required by Form 18, the Court gave Infineon until October 5, 2012 to file a Second Amended Complaint. *Id.* at 4:21-5:8, 10:19-20.

Infineon's complaint no longer refers to "other products," which the Court held did not provide the required specificity; instead, Infineon's Second Amended Complaint now identifies a category of infringing products for each patent, in conformity with Form 18 and the Court's prior order. In particular, with respect to U.S. Patent No 5,945,730, Infineon identified the category of infringing products as "integrated power fcQFN (flip-chip quad flat no-lead) products with two or more ground pins and two or more switching node pins." Dkt. No. 130 at ¶ 20. This category is at least as specific as "electric motors" in Form 18. And, as noted above, Volterra does not argue otherwise or raise any objection to Infineon's description of the category of infringing products.

In the prior order, this Court held that identifying a general category of infringing products complies with Form 18 and necessarily defeats a motion to dismiss. The Court's prior holding, which Volterra conveniently ignores, is the law of the case. *See United States v. Jingles*, 682 F.3d 811, 816 (9th Cir. 2012) ("Under the law of the case doctrine, a court is ordinarily precluded from reexamining an issue previously decided by the same court, or a higher court, in the same case. For the doctrine to apply, the issue in question must have been decided explicitly or by necessary implication in [the] previous disposition."). Volterra's failure to acknowledge this holding or even mention the legal authority on which the Court relied—namely, Form 18 and the Federal Circuit's holding in *Bill of Lading*—underscores the bad faith nature of Volterra's Motion.

### B. Given that Infineon Identified a Category of Infringing Products, Infineon Has No Obligation To Identify Any Products by Model Number.

The only argument raised in Volterra's Motion focuses on Infineon's identification of specific model numbers, which this Court has already held "provides detail ***beyond*** that required by Form 18." Dkt. No. 125 at 4:8-13 (emphasis added). Volterra argues that Infineon improperly uses the phrase "including without limitation" to introduce the fifteen products identified by model number, thus allowing for additional products beyond those fifteen. Dkt. No. 136 at 7. As explained above, Infineon fulfilled its pleading obligations by identifying a category of infringing products. Thus, Infineon is not required to identify ***any*** products by model number, much less required to provide an exhaustive list of all model numbers as Volterra demands. The fact that Infineon went beyond its pleading obligations by identifying some products by model number, does not mean that Infineon must provide an exhaustive list of model numbers for all infringing products.

If Volterra were correct that a patent infringement complaint must identify specific model numbers, then this Court's patent local rule requiring that accused devices "be identified by name or model number, ***if known***" would make no sense. Patent L.R. 3-1(b) (emphasis added). Moreover, under Volterra's erroneous view of the law, patent plaintiffs would need to amend their complaint each time they wished to accuse a new product of infringement. This would lead to wasteful motion practice for a common occurrence. Volterra's argument to limit the pleadings to specific model numbers is simply a transparent attempt to improperly limit discovery. As discussed further below, the weight of authority is that discovery of products similar to those accused of infringement is permitted to ascertain the full scope of a defendant's infringement.

### II. Volterra Falsely States That Infineon Has Extensive Knowledge of Volterra's Products That Enables Infineon to Easily Identify All Accused Products by Model Number.

Volterra alleges that Infineon has extensive knowledge of Volterra's products that enables Infineon to easily identify all accused products by model number. Dkt. No. 136 at 3:19-20, 5:15-25, 8:23-9:1. Volterra's allegation is irrelevant to its Motion to Dismiss. Even if Volterra's allegation were true (and it is not), there is no requirement that Infineon plead every fact in its possession. The relevant issue is whether Infineon pled patent infringement in conformity with

Form 18 in the Appendix of Forms included in the Federal Rules of Civil Procedure. *Bill of Lading*, 681 F.3d at 1334. As explained above, Infineon fulfilled its pleading obligations by identifying a category of infringing products in its Second Amended Complaint.

Moreover, contrary to Volterra's allegation, Infineon has limited knowledge of Volterra's products. Volterra purposefully restricts the publicly available information about its products. Moreover, Volterra has prevented Infineon from using the datasheets and other documents that Volterra produced in its lawsuit against Infineon before Judge Spero ("Judge Spero's case"). Volterra has done so despite (a) Judge Spero's admonition that Volterra should strongly consider allowing such use, and (b) the Ninth Circuit's view that "strongly favors access to discovery materials to meet the needs of parties engaged in collateral litigation," even where that material is subject to a protective order, *Foltz v. State Farm Mut. Auto Ins. Co.,* 331 F.3d 1122, 1131 (9th Cir. 2003).

### A. Volterra Restricts the Publicly Available Information on Its Products.

Volterra does not market or sell its products to the general public. Instead, Volterra markets and sells them to only a "narrow list of customers." At the May 2011 trial in Judge Spero's case, Volterra's Senior Vice President Craig Teuscher testified about Volterra's marketing and sales of the integrated power fcQFN products at issue in this case:

> Q. And can you describe what you and others that worked there do to market the flip chip power switch products to potential customers?
>
> A. Yes. What we do is we identify a fairly **narrow list of customers** in these focus markets and we specifically identify at those customers the key technical engineers and managers responsible for power supply design. We focus with those customers and, you know, introduce our products, introduce their capabilities, frequently demonstrate those products to them and promote the benefits and capabilities of the products.

Ex. A at 729:10-19 (emphasis added).

Volterra also does not make its product datasheets available to the general public. At trial, Mr. Teuscher testified that Volterra provides product datasheets to a "select group of customers" who are require to sign a nondisclosure agreement:

> Q. In your efforts to talk to you potential customers, does Volterra provide any documents to them?

      A.     Yes, we do.

      Q.     What are those?

      A.     The primary documents we provide to customers are called datasheets.

      *Q.     Are these available to the general public?*

      *A.     No, they are not. We only provide datasheets to the specific select group of customers that we're actually working with. And in conjunction with providing those datasheets, we insist that they sign a nondisclosure agreement and commit that they will not share that information with other parties.*

Ex. A at 730:17-731:3 (emphasis added); *see also* Ex. A at 782:25-783:8.

Volterra even requires a login and password to access product information on its website. Below is the homepage of Volterra's website. Infineon added red "NO" locks to identify those hyperlinks that take users to a webpage requiring a login and password.[3]



As shown below, the login page states, "Access to the secure areas of our website is restricted to customers who have a signed NDA (Non-Disclosure Agreement) in place. We will be unable to grant access to the secure pages if your company does not have an NDA in place with Volterra."

---

[3] The "Product Selector Guide" hyperlink takes a user to a page with a general description of Volterra's families of products, but the links regarding the product families take users to the login page.



Apparently, Volterra was surprised that Infineon was able to identify as many model numbers as it did, because after Infineon served its infringement contentions, Volterra removed from its website several documents that Infineon cited in its infringement contentions.

**B.      Volterra Has Refused to Let Infineon Use the Datasheets and Other Documents That Volterra Produced in Judge Spero's Case.**

Precisely because information about Volterra's products is so difficult to obtain publicly, Volterra has engaged in gamesmanship seeking to prevent Infineon from using information that it learned about Volterra's products in Judge Spero's case. Volterra has tried to hide behind the protective order in Judge Spero's case in an effort to prevent Infineon's counsel from using information from that case to prepare infringement contentions in this case. So far, Volterra has succeeded, despite the Ninth Circuit policy to the contrary. *Foltz v. State Farm Mut. Auto Ins. Co.,* 331 F.3d 1122, 1131 (9th Cir. 2003). Lawsuits are supposed to be a search for the truth. Volterra seeks to cover up the truth by preventing the use of discovery materials from Judge Spero's case.

Volterra's conduct is particularly disingenuous given that Volterra previously attempted to limit discovery in this case based upon the prior discovery in Judge Spero's case. This Court will

recall that in the Case Management Statement concerning the initial schedule, Volterra specifically identified binders full of datasheets as relevant discovery already in Infineon's possession. Dkt. No. 78 at 14.[4] Volterra's counsel Mr. Fisher then argued at the Case Management Conference that this Court should limit discovery in this case based upon the discovery provided in Judge Spero's case. But after the Court refused to limit discovery at the Case Management Conference, Volterra did an about face, hid behind the protective order in Judge Spero's case, and refused to let Infineon's counsel use *any* information produced in Judge Spero's case to prepare its infringement contentions. Volterra is playing games to hide the truth which this Court should not tolerate.

This Court will also recall that Volterra agreed at the Case Management Conference to work with Infineon for a suitable stipulation for the use of discovery materials from Judge Spero's case in this case. In April, Volterra initially agreed to modify Judge Spero's Protective Order so that Infineon could use the prior discovery in this case. *See* Wille Decl. at ¶ 3, Ex. B (E-mail from Jeff Fisher to David Wille (April 16, 2012, 08:34 CST) ("That is acceptable provided both sides agree that the provisions of the protective order in the Volterra [case] continue to apply in the Infineon action. Can you prepare a stip'n on this?")). When Infineon provided a draft, Volterra only noted that it disagreed with the language and would "prepare a revised stipulation." *See* Wille Decl. at ¶ 4, Ex. C (E-mail from James Morando to Samir Bhavsar (April 25, 2012, 10:05 CST)). Volterra never provided a draft. Wille Decl. at ¶ 4. Instead, Volterra reversed course and has since refused to agree to any stipulation. *Id.*[5]

---

[4] In that Case Management Statement, Volterra identified specific evidence that is relevant to the accused products, including "an interrogatory response which consisted of hundreds of pages addressing each of the individual power stage products that Volterra had sold," "eight full thick binders containing design documents and product layouts [i.e. datasheets] showing the structure and components of Volterra's power stage products," the deposition of "David Lidsky, one of Volterra's chief engineers, and the lead designer on many of those products, . . . as to the operation of Volterra's products" Dkt. No. 78 at 14. Although Volterra itself identified specific evidence relating to the accused products, Volterra now accuses Infineon of seeking to engage in a "fishing expedition." Dkt. No. 136 at 10:20.

[5] Volterra also refused to produce in this case the specific binders that Volterra referred to in the Case Management Statement. Volterra opposed Infineon's motion to compel production of the binders, and Magistrate Judge Ryu declined to compel discovery before Infineon served its Rule 3-1 Patent Infringement Contentions. Dkt. No. 91.

When Infineon moved to modify Judge Spero's Protective Order to allow Infineon to use the prior discovery from Judge Spero's case in this case, Judge Spero criticized Volterra for its discovery gamesmanship at a September 2012 hearing. Judge Spero told Volterra that Infineon would eventually get to use the prior discovery and amend its infringement contentions. He chastised Volterra for "multiplying the proceedings" so as to "have many lawyers working many hours on things" and thereby "making [the case] more expensive and more difficult to resolve":

> ***So let me talk to Volterra a little bit about this. I think your position is one that is designed to foment more litigation. Here's why I think that: They're going to get these documents eventually and be able to use them for exactly what they want to use them for. If they can't use them now, they'll get them – make a move to amend.*** Or, if they're not allowed to move to amend and the devices are not in the case yet, they'll file another case and have the devices in that case.
>
> I think all this is designed to do is a shortsighted tactical maneuver[.]
>
> * * *
>
> . . . ***I think inevitably, you're going to force people to go through several rounds of litigation that are going to result in the same place, with amended infringement contentions using the information they want***.
>
> * * *
>
> THE COURT: . . . ***Mr. Morando, don't misunderstand me: I'm ruling your way. I think it's a mistake. I think you should change your mind. I think you're very lucky that case isn't in front of me***, notwithstanding probably prior opinions on this subject.
>
> MR. MORANDO: We were still happy to have –
>
> THE COURT: I understand that. But nonetheless, ***it is a terrible mistake and a disservice to all the clients for you to litigate patent cases in this way. I wish they were here to hear me say that. I think it will prolong the litigation between both the parties. I think it will result in more expense between the parties. I think it will not result in any material victories for either side***.
>
> I'm just trying to tell you: I think you ought to change your mind. I'm not persuaded by Mr. Wille that my decision is wrong. I think it's probably threading the needle in the right way. But I can tell you that I think what you're doing, while it may be a tactically — a near-term correct decision, is a strategic mistake.
>
> MR. MORANDO: If there is any additional effort required to produce something a second time, it's Volterra that's really going to suffer that. Right? I mean, what they want is information about our technology and products, right? If we have to go dig up our design information and provide it a second time about what at best

> would be a limited subset of products, it's only going to be Volterra who has to do that work.
>
> THE COURT: It's not the issue of the minor effort of reproducing documents that I'm concerned about. That is the least of my concerns. ***It is multiple court proceedings and multiple motions where you have many lawyers working many hours on things. That's what I'm most concerned about. It is about the delayed results of the proceedings. This case should have been settled two years ago.*** How many times, how many trials we're going to have to go through -- probably it looks like at least two or three -- for it to resolve. Something is wrong in the way that this case is being handled, and I have no idea where it is, but ***I think that people are multiplying the proceedings***, and when you multiply the proceedings, as the Apple/Samsung people found out, it becomes less and less capable of being settled, because there's too many places for somebody to say, Oh, we'll wait till that one; we'll wait till that one; we'll wait till that one. ***All you're doing is making it more expensive and more difficult to resolve***.

Wille Decl., Ex. D (Sept. 7, 2012 Hearing Transcript) at 10:8-18, 11:18-21, 13:3-14:24 (emphasis added).

Despite Judge Spero's strong words in last month's hearing, Volterra was unmoved. Volterra's plan all along has been to (a) delay this case as much as possible, (b) resist discovery as much as possible, and (c) make Infineon expend as many resources as possible to litigate its case. Volterra's second Motion to Dismiss, which is inconsistent with this Court's prior ruling that is the law of the case, is yet another example of Volterra's "multiplying the proceedings" so as to "have many lawyers working many hours on things" and thereby "making [the case] more expensive and more difficult to resolve."

Volterra's Motion also reveals its duplicity. On the one hand, Volterra (a) acts to prevent Infineon using documents already in its counsel's possession to identify the model numbers of additional infringing products, (b) locks down its website to restrict the publicly available information on its products, (c) removes from its website information cited in Infineon's infringement contentions, and (d) makes it customers enter into nondisclosure agreements in an effort to keep even its datasheets confidential. On the other hand, Volterra complains that that Infineon did not identify more model numbers in its Second Amended Complaint. Volterra cannot have it both ways. Now that Volterra has prohibited Infineon from obtaining and using

the very information from which it could have determined whether additional model numbers are infringing, Volterra cannot fairly complain that Infineon did not identify more model numbers.

### III. Volterra's Request to Dismiss with Prejudice and Request to Strike the "Including Without Limitation" Language Are Improper Attempts to Prevent Infineon From Obtaining the Discovery to Which It Is Entitled.

Volterra's Motion is yet another attempt by Volterra to hide the truth. Volterra is trying to prevent Infineon from obtaining discovery on Volterra products to avoid the merits of Infineon's infringement case. Previously, in its Second Motion to Strike Infineon's Amended Infringement Contentions, Volterra asked the Court to prohibit Infineon from seeking discovery beyond the fifteen products identified by model number. Dkt. No. 107 at 9. Here, Volterra tries to obtain the same relief by asking the Court to dismiss *with prejudice* any products other than those listed by model number (Dkt. No. 136 at 9:16-25) and to strike the "including without limitation language" from Infineon's complaint (Dkt. No. 136 at 10:1-25). As Infineon argued in opposition to Volterra's prior motion, Infineon is entitled to discovery on Volterra products beyond the fifteen identified by model number. Dkt. No. 119 at 22-25 (citing numerous cases approving discovery of products not specifically accused of infringement against the objection of the defendant). The Federal Rules of Civil Procedure establish a broad discovery regime, and consistent with those rules, the Patent Local Rules enable a party to obtain discovery and to amend its infringement contentions to identify additional accused products.

The Federal Rules of Civil Procedure define broadly the scope of discovery. Under Rule 26, a party "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). In patent cases, the scope of discovery under Rule 26 "should be liberally construed." *Vasudevan Software, Inc. v. Int'l Business Machs. Corp.*, No. C 09-05897 RS (PSG), 2011 WL 1599646, at *1 (N.D. Cal. Apr. 27, 2011) (quoting *Phoenix Solutions, Inc. v. Wells Fargo Bank, N.A.*, 254 F.R.D. 568, 575 (N.D. Cal. 2008)). In particular, "the rule contemplates discovery into any matter that bears on or that reasonably could lead to other matter that could bear on any issue that is or may be raised in a case." *Id.* (internal citations omitted).

Contrary to Volterra's requested relief, the Patent Local Rules contemplate that a patentee may obtain discovery on unnamed products and amend its infringement contentions to include those additional products. The Patent Local Rules do not require a patentee to identify the accused products by model number, much less limit discovery to only those products. Patent L.R. 3-1 (the products "shall be identified by name or model number, *if known*") (emphasis added). Furthermore, Patent Local Rule 3-6 contemplates that a patentee may obtain information about other products during discovery and, upon a showing of good cause, amend its infringement contentions. Patent L.R. 3-6.

In *O2 Micro Int'l Ltd. v. Monolithic Power Systems, Inc.*, the Federal Circuit held that the Patent Local Rules of this jurisdiction are valid for the very reason that they permit amendment of infringement contentions based on information revealed during discovery. *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1365-66 (Fed Cir. 2006). A local rule requiring final infringement contentions before the end of discovery "might well conflict with the spirit, if not the letter, of the notice pleading and broad discovery regime created by the Federal Rules," and so would be invalid. *Id.* at 1365-66. Likewise, Volterra's attempt to limit Infineon's complaint to only those products identified by model number at the outset of the case is inconsistent with the notice pleading and broad discovery regime created by the Federal Rules.

In accordance with the Federal Rules, the Northern District of California has consistently recognized that unidentified products are discoverable. For example, in *Advanced Micro Devices, Inc. v. Samsung Electronics Co.*, the court denied a motion for a protective order to prohibit discovery on products that were not identified in the infringement contentions. No. C 08-986 SI, 2009 WL 1834147, at *3 (N.D. Cal. June 24, 2009). In its infringement contentions, AMD identified Samsung's memory products, but not its processors. The court recognized that the prevailing rule is that "the scope of discovery may include products and services reasonably similar to those accused in the preliminary infringement contentions." *Id.* (quoting *Dr. Sys. Inc. v. Fujifilm Med. Sys. USA, Inc.*, No. 06cv417 JS (NLS), 2008 WL 1734241, at *3 (S.D. Cal. Apr. 10, 2008)). The court concluded that under AMD's infringement theory, the processors and memory products were reasonably similar, and ordered Samsung to produce documents regarding

the processors. *Id*; s*ee also L.G. Philips LCD Co. Ltd. v. Tatung Co.*, No. C-07-80073WHA, 2007 WL 869256, at *2-3 (N.D. Cal. Mar. 20, 2007) (denying motion to limit the scope of discovery to those products accused of infringement).

Other district courts have reached the same conclusion:

- In *EPOS Technologies v. Pegasus Technologies*, the District of Columbia compelled the accused infringer to provide discovery related to products reasonably similar to those identified in the patentee's infringement contentions. 842 F. Supp. 2d 31, 33 (D.D.C. 2012). "Case law from various circuits clearly states that there is no bright-line rule limiting discovery to only those products specifically accused in a party's infringement contentions." *Id.*

- In *Dr. Systems Inc. v. Fujifilm Medical Systems USA, Inc.*, the Southern District of California held, "No bright line rule governs whether discovery can be obtained only for products expressly accused in infringement contentions." 2008 WL 1734241, at *3. Under Rule 26, the patentee was entitled to discovery on products that were not expressly named in the infringement contentions. *Id.*; *see also WebSideStory, Inc. v. Netratings, Inc.*, No. 06cv408 WQH (AJB), 2007 WL 1109597, at *2 (S.D. Cal. Apr. 11, 2007) (Rule 26 entitles a patentee to discovery relating to products not specifically mentioned in the infringement contentions).

- In *L.G. Philips LCD Co. Ltd. v. Tatung Co.*, the Eastern District of California rejected an accused infringer's attempt to limit discovery to the accused products. Nos. F-07-0009 EFB, S-07-0018 FCD EFB, 2007 WL 869700, at *2 (E.D. Cal Mar. 21, 2007). The court held that the patentee may seek discovery "about ***all*** potentially infringing products, not just those that have so far been identified." *Id.*

- In *Epicrealm, Licensing LLC v. Autoflex Leasing, Inc.*, the Eastern District of Texas applied *O2 Micro* to hold that the scope of discovery may include products and services "reasonably similar" to those accused in the infringement contentions. Nos. 2:05-CV-163-DF-CMC and 2:05-CV-356-DF-CMC, 2007 WL 2580969 at *3 (E.D. Tex. Aug. 27, 2007); *see also Honeywell Int'l, Inc. v. Acer Am. Corp.*, 655 F. Supp. 2d 650, 654-57 (E.D. Tex. 2009) (limiting discovery to specifically identified products is "inconsistent with the broad discovery regime created by the Federal Rules and the notion that a party may be able to amend its PICs").

Volterra fails to cite even a single decision that supports at the outset of a case limiting a complaint to only those products identified by model number and dismissing ***with prejudice*** all other products. Such a holding would amount to a decision on the merits before Infineon has had an opportunity to take any discovery at all. That would be inconsistent with the Federal Rules of Civil Procedure and the above case law applying those rules.[6]

---

[6] To the extent the Court agrees with any of Volterra's objections to Infineon's complaint, Infineon requests leave to amend to cure any alleged defects. Because any alleged pleading defects are curable, dismissal with prejudice would be improper. *Costello v. U. S.*, 365 U.S. 265, 284 (1961) ("At common law dismissal on a ground not going to the merits was not ordinarily a bar to a subsequent action on the same claim.").

## CONCLUSION

For the foregoing reasons, Infineon asks that the Court deny Volterra's Motion to Dismiss.

Respectfully submitted,

October 24, 2012

By: /s/ *David G. Wille*
Jeffery D. Baxter (Pro Hac Vice)
David G. Wille (Pro Hac Vice)

Baker Botts L.L.P.
2001 Ross Avenue
Dallas, Texas 75201
Telephone: (214) 953-6791

Attorneys for Plaintiff
INFINEON TECHNOLOGIES AG