DAVID G. WILLE (*Pro Hac Vice*) (TX Bar No. 08945388)
JEFFERY D. BAXTER (*Pro Hac Vice*) (TX Bar No. 24006816)
AARON DAVIDSON (*Pro Hac Vice*) (TX Bar No. 24007080)
SAMIR A. BHAVSAR (*Pro Hac Vice*) (TX Bar No. 00798065)
BAKER BOTTS L.L.P.
2001 Ross Avenue
Dallas, Texas 75201
Telephone: (214) 953-6500
Facsimile:  (214) 953-6503
E-mail: david.wille@bakerbotts.com
E-mail: jeff.baxter@bakerbotts.com
E-mail: aaron.davidson@bakerbotts.com
E-mail: samir.bhavsar@bakerbotts.com

STEPHEN E. TAYLOR (SBN 058452)
JONATHAN A. PATCHEN (SBN 237346)
CHRISTOPHER A. WIMMER (SBN 263275)
TAYLOR & COMPANY LAW OFFICES, LLP
One Ferry Building, Suite 355
San Francisco, California 94111
Telephone: (415) 788-8200
Facsimile:  (415) 788-8208
E-mail: staylor@tcolaw.com
E-mail: jpatchen@tcolaw.com
E-mail: cwimmer@tcolaw.com

Attorneys for Plaintiff
INFINEON TECHNOLOGIES AG

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| INFINEON TECHNOLOGIES AG, a German corporation,<br><br>　　　　　　　Plaintiff,<br><br>vs.<br><br>VOLTERRA SEMICONDUCTOR CORPORATION, a Delaware corporation,<br><br>　　　　　　　Defendant. | Case No. CV-11-06239 (MMC) (DMR)<br><br>**PLAINTIFF INFINEON'S SECOND MOTION TO DISMISS VOLTERRA'S COUNTERCLAIMS AND STRIKE VOLTERRA'S AFFIRMATIVE DEFENSES**<br><br>Date:　　April 19, 2013<br>Time:　　9:00 a.m.<br>Dept.:　　Courtroom 7, 19th Floor<br>Judge:　 Honorable Maxine M. Chesney |

# TABLE OF CONTENTS

STATEMENT OF ISSUES TO BE DECIDED ...................................................................... 2

STATEMENT OF LAW ...................................................................................................... 2

ARGUMENT ....................................................................................................................... 4

I.   Volterra's Claims and Defenses of Invalidity Remain Entirely Conclusory and
     Should Be Dismissed and Stricken. ....................................................................... 4

     A.   Volterra Made No Meaningful Changes to Its Invalidity Counterclaims,
          Which Still Provide Absolutely No Information About Their Factual Bases......... 4

     B.   Volterra's   Second   Affirmative   Defense   Mirrors   Its   Threadbare
          Counterclaim and Does Not Provide Fair Notice. .................................... 8

II.  Volterra's Claims and Defenses of Indirect Noninfringement Lack Any Supporting
     Factual Allegations and Should Be Dismissed and Stricken. ............................................ 9

     A.   Volterra's   Noninfringement   Counterclaims   Are   Devoid   of   Any   Real
          Factual Content. ........................................................................................ 9

     B.   Volterra's Conclusorily Pled First Affirmative Defense Suffers from the
          Same Flaw. .............................................................................................. 11

III. Volterra's   Equitable   "Catch-all"   Affirmative   Defense   Is   Improper   and
     Inadequately Pled. ................................................................................................ 12

     A.   Volterra's   Fifth   Affirmative   Defense   Improperly   Lumps   Together
          Numerous Separate Defenses in an Effort To Mask Its Failure to Plead
          Supporting Factual Allegations for Each One. ...................................... 12

     B.   The Scant Factual Allegations Do Not Address the Elements of the Listed
          Defenses and Fail to Provide Fair Notice. ............................................ 13

          1.   Equitable Estoppel ...................................................................... 13

          2.   Laches ......................................................................................... 15

          3.   Unclean Hands ............................................................................ 15

          4.   Waiver ......................................................................................... 17

IV.  Volterra Added No Real Factual Content to Its Fourth Affirmative Defense That
     Would Provide Fair Notice. ................................................................................. 18

CONCLUSION ................................................................................................................. 19

1

**TABLE OF AUTHORITIES**

2

**Page(s)**

CASES

3

*A.C. Aukerman Co. v. R.L. Chaides Const. Co.*,
4     960 F.2d 1020 (Fed. Cir. 1992) ................................................................... 14, 15

5   *ACCO Brands Inc. v. ABA Locks Mfg. Co.*,
      501 F.3d 1307 (Fed. Cir. 2007) ......................................................................... 9
6

7   *Adler v. Federal Republic of Nigeria*,
      219 F.3d 869 (9th Cir. 2000) ............................................................................ 15

8
    *Ansari v. Electronic Document Processing, Inc.*,
9     No. 12-CV-1245, 2013 WL 664676 (N.D. Cal. Feb. 22, 2013) .................... 9, 11, 19

10  *Arris Group, Inc. v. British Telecommunications PLC*,
      639 F.3d 1368 (Fed. Cir. 2011) ..................................................................... 9, 11
11

12  *Ashcroft v. Iqbal*,
      556 U.S. 662 (2009) ................................................................................... *passim*

13
    *Aspex Eyewear, Inc. v. Clariti Eyewear, Inc.*,
14    605 F.3d 1305 (Fed. Cir. 2010) ....................................................................... 14

15  *Barnes & Noble, Inc. v. LSI Corp.*,
      849 F. Supp. 2d 925 (N.D. Cal. 2012) .............................................................. 15
16

17  *Barnes v. AT&T Pension Benefit Plan-Nonbargained Program*,
      718 F. Supp. 2d 1167 (N.D. Cal 2010) ............................................................... 4

18
    *Bayer CropScience AG v. Dow AgroSciences LLC*,
19    No. 10-CV-1045, 2011 WL 6934557 (D. Del. Dec. 30, 2011) ............................ 15

20  *Bell Atlantic Corp. v. Twombly*,
      550 U.S. 544 (2007) ................................................................................... *passim*
21

22  *Cleversafe, Inc. v. Amplidata, Inc.*,
      No. 11-CV-4890, 2011 WL 6379300 (N.D. Ill. Dec. 20, 2011) ............................ 6

23  *Conley v. Gibson*,
      355 U.S. 41 (1957) ............................................................................................ 3
24

25  *Davison Design & Development Inc. v. Riley*,
      No. 11-CV-2970, 2012 WL 4051189 (N.D. Cal. Sept. 13, 2012) ......................... 4

26
    *Diamond v. Chakrabarty*,
27    447 U.S. 303 (1980) .......................................................................................... 6

28

*Diamond State Ins. Co. v. Marin Mountain Bikes, Inc.*,
  No. 11-CV-5193, 2012 WL 6680259 (N.D. Cal. Dec. 21, 2012) ...................... 3, 8, 11, 13, 18

*Dollar Sys. v. Avcar Leasing Sys.*,
  890 F.2d 165 (9th Cir. 1989) .................................................................................... 15

*Fantasy, Inc. v. Fogerty*,
  984 F.2d 1524 (9th Cir. 1993), rev'd on other grounds, 510 U.S. 517 (1994) ........................ 4

*Groupon Inc. v. MobGob LLC*,
  No. 10-CV-7456, 2011 WL 2111986 (N.D. Ill. May 25, 2011) ........................................ 7, 9

*Hynix Semiconductor Inc. v. Rambus, Inc.*,
  591 F. Supp. 2d 1038 (N.D. Cal. 2006) ................................................................ 16

*Iconfind, Inc. v. Google, Inc.*,
  No. 11-CV-319, 2011 WL 4505779 (E.D. Cal. Aug. 2, 2011) ...................................... 6, 7, 8

*In re Bill of Lading Transmission & Processing Sys. Patent Litig.*,
  681 F.3d 1323 (Fed. Cir. 2012) ............................................................................ 10

*In re Dual-Deck Video Cassette Recorder Antitrust Litig.*,
  10 F.3d 693 (9th Cir. 1993) ................................................................................ 16

*J & J Sports Prods., Inc. v. Nguyen*,
  No. 11-CV-5433, 2012 WL 1030067 (N.D. Cal. Mar. 22, 2012) .......................................... 12

*Jarrow Formulas, Inc. v. Nutrition Now, Inc.*,
  304 F.3d 829 (9th Cir. 2002) ................................................................................ 16

*Kearns v. Ford Motor Co.*,
  567 F.3d 1120 (9th Cir. 2009) ......................................................................... 14, 17

*Lynch v. Cont'l Group, Inc.*,
  No. 12-CV-21648, 2013 WL 166226 (S.D. Fla. Jan. 15, 2013) ........................................ 12

*Mittelstaedt v. Gamla-Cedron Orleans LLC*,
  No. 12-CV-5131, 2012 WL 6188548 (N.D. Ill. Dec. 21, 2012) ........................................ 17

*Pagemelding, Inc. v. ESPN, Inc.*,
  No. 11-CV-6263, 2012 WL 3877686 (N.D. Cal. Sept. 6, 2012) ........................... 2, 3, 7, 10, 11

*PB Farradyne, Inc. v. Peterson*,
  No. 05-CV-3447, 2006 WL 132182 (N.D. Cal. Jan. 17, 2006) ............................................. 5

*PenneCom B.V. v. Merrill Lynch & Co.*,
  372 F.3d 488 (2d Cir. 2004) ................................................................................. 16

*Powertech Tech., Inc. v. Tessera, Inc.*,
  No. 10-CV-945, 2012 WL 1746848 (N.D. Cal. May 16, 2012) ....................................... 3, 17

*Proctor & Gamble Co. v. Team Techs., Inc.*,
    No. 12-CV-552, 2012 WL 6001753 (S.D. Ohio Nov. 30, 2012)............................................. 6

*Qarbon.com Inc. v. eHelp Corp.*,
    315 F. Supp. 2d 1046 (N.D. Cal. 2004) ....................................................... 3, 5, 7, 13

*Republic Molding Corp. v. B. W. Photo Utilities*,
    319 F.2d 347 (9th Cir. 1963)........................................................................................ 16

*Sorensen v. Spectrum Brands, Inc.*,
    No. 09-CV-58, 2009 WL 5199461 (S.D. Cal. Dec. 23, 2009).................................... 7

*Therasense, Inc. v. Becton, Dickinson & Co.*,
    649 F.3d 1276 (Fed. Cir. 2011)................................................................................... 15

*United States v. King Features Entm't, Inc.*,
    843 F.2d 394 (9th Cir. 1988)....................................................................................... 17

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003)..................................................................................... 14

*Winbond Elec. Corp. v. Int'l Trade Comm'n*,
    262 F.3d 1363 (Fed. Cir. 2001)................................................................................... 14

*Wyshak v. City Nat'l Bank*,
    607 F.2d 824 (9th Cir. 1979)......................................................................................... 3

*Zucco Partners, LLC v. Digimarc Corp.*,
    552 F.3d 981 (9th Cir. 2009)......................................................................................... 8

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure 8................................................................................... 2

Federal Rule of Civil Procedure 9(b) .................................................................... 14, 15

Federal Rule of Civil Procedure 10(b) ....................................................................... 12

Federal Rule of Civil Procedure Rule 12 ...................................................................... 4

**NOTICE OF MOTION**

NOTICE IS HEREBY GIVEN that, on April 19, 2013, at 9 a.m., or as soon thereafter as counsel may be heard, at the United States District Court for the Northern District of California, 450 Golden Gate Avenue, Courtroom 7, 19th Floor, San Francisco, California, Plaintiff Infineon Technologies AG ("Infineon") will move the Honorable Maxine M. Chesney to dismiss the counterclaims and strike the affirmative defenses contained in Defendant Volterra Semiconductor Corporation's ("Volterra") Amended Answer to Infineon Technologies AG's Second Amended Complaint, and Counterclaims (ECF No. 203) (the "Motion").

**REQUESTED RELIEF**

The Motion seeks an order dismissing the counterclaims and striking the affirmative defenses in Volterra's Answer.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**INTRODUCTION**

Infineon filed its original complaint in this action nearly three years ago, on January 21, 2010. (Dkt. No. 1.) After filing no less than four different motions to dismiss in this case, three of them based on the sufficiency of the pleadings, (Dkt. Nos. 11, 19, 90, 136,) Volterra ultimately filed its answer, which consisted almost entirely of boilerplate recitations and bare legal conclusions. (Answer, Dkt. No. 163, at 34-40.) In contrast to the many specific factual allegations in Infineon's complaint—allegations which Volterra challenged as insufficient—Volterra's counterclaims and affirmative defenses contained almost no factual allegations at all. This Court agreed, and granted Infineon's motion to dismiss the counterclaims and strike the affirmative defenses in its entirety with leave to replead. Dkt. No. 198.

Despite being given a second chance, most of Volterra's claims and defenses in its Amended Answer still fail to plead facts plausibly showing an entitlement to relief. (FAA, Dkt. No. 203, at 35-43.) Most of Volterra's amendments amount to changes in form rather than substance. For example, Volterra's invalidity counterclaims and affirmative defense, rather than merely reciting statutory subsections, now describe the content of those subsections as well. Crucially, however, those invalidity claims and defenses still fail to include ***any*** factual

allegations making them plausible.  Such conclusory allegations do not comply with Volterra's obligations under the Federal Rules and ignore the substance of this Court's prior order.  Accordingly, the Court should once again dismiss Volterra's counterclaims and strike Volterra's affirmative defenses in the manner set forth below.

**STATEMENT OF ISSUES TO BE DECIDED**

A.    Whether Volterra's counterclaims of invalidity and indirect noninfringement should be dismissed for failure to state a claim upon which relief may be granted.

B.    Whether Volterra's First, Second, Fourth, and Fifth Affirmative Defenses should be stricken for failure to meet the pleading requirements of Federal Rule of Civil Procedure 8(a)(2).

**STATEMENT OF LAW**

Under Rule 12(b)(6), a court may dismiss "a claim for relief in any pleading" for "failure to state a claim upon which relief can be granted."  "A motion to dismiss a counterclaim brought pursuant to FRCP 12(b)(6) is evaluated under the same standard as a motion to dismiss a plaintiff's complaint."  *Pagemelding, Inc. v. ESPN, Inc.*, No. 11-CV-6263, 2012 WL 3877686, at *1 (N.D. Cal. Sept. 6, 2012).  A pleading – including a counterclaim – must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Counterclaims must be pled with sufficient specificity to provide "fair notice of what the claim is and the grounds upon which it rests."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alterations omitted).  To survive a motion to dismiss, a pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  Thus, the pleading must set forth "direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory."  *Twombly*, 550 U.S. at 562.  Although a court deciding a motion to dismiss must assume the truth of all facts alleged, the court is "not bound to accept as true a legal conclusion couched as a factual allegation."  *Twombly*, 550 U.S. at 555.  To meet a claimant's obligation under Rule 8(a)(2), mere "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Iqbal*, 556 U.S. at 678. (quoting *Twombly*, 550

U.S. at 555).   "[N]aked assertions devoid of further factual enhancement" are likewise insufficient.  *Id.* (internal quotation marks and alterations omitted).

"Affirmative defenses are governed by the same pleading standards as claims." *Pagemelding*, 2012 WL 3877686, at *3.   The Ninth Circuit has long held that the "key to determining the sufficiency of pleading an affirmative defense is whether it gives plaintiff fair notice of the defense." *Wyshak v. City Nat'l Bank*, 607 F.2d 824, 827 (9th Cir. 1979).   In doing so, the Ninth Circuit pointed to *Conley v. Gibson*, 355 U.S. 41 (1957), which at the time governed the sufficiency of pleading for claims.   In *Twombly*, the Supreme Court retired the *Conley* standard and clarified that the pleading standard under Rule 8 includes a plausibility requirement. *See Twombly*, 550 U.S. at 562-63.   As this Court correctly concluded, affirmative defenses must be evaluated under the standards announced in *Twombly* and *Iqbal*.   Dkt. No. 198 at 3 n.4; *see also, e.g.*, *Powertech Tech., Inc. v. Tessera, Inc.*, No. 10-CV-945, 2012 WL 1746848, at *4 (N.D. Cal. May 16, 2012) ("Within the Northern District of California, it appears that the judges who have decided the issue thus far have uniformly found that the *Twombly* and *Iqbal* standard does apply to affirmative defenses.").

At a minimum, therefore, the pleading must set out the elements of each affirmative defense and some factual allegations that plausibly demonstrate that each element is satisfied. *See, e.g.*, *Qarbon.com Inc. v. eHelp Corp.*, 315 F. Supp. 2d 1046, 1049-50 (N.D. Cal. 2004) ("Because eHelp simply refers to the doctrines without setting forth the elements of its affirmative defenses, eHelp does not provide 'fair notice' of its defenses."); *Diamond State Ins. Co. v. Marin Mountain Bikes, Inc.*, No. 11-CV-5193, 2012 WL 6680259, at *17 (N.D. Cal. Dec. 21, 2012) ("[F]air notice requires sufficient factual matter, accepted as true, beyond simply conclusory statements, to state the elements of a defense." (internal quotation marks omitted)); *see also Twombly*, 550 U.S. at 562 (holding that the complaint must set forth "direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory").   Applying the *Iqbal* standard to weed out conclusory defenses "serves a valid purpose in requiring at least some valid factual basis for pleading an affirmative defense and not

adding it to the case simply upon some conjecture that it may somehow apply." *Barnes v. AT&T Pension Benefit Plan-Nonbargained Program*, 718 F. Supp. 2d 1167, 1172 (N.D. Cal 2010).

An affirmative defense that fails to meet this standard may be stricken under Rule 12(f). *See* Fed. R. Civ. P. 12(f) ("The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.")   "Where an affirmative defense simply states a legal conclusion or theory without the support of facts explaining how it connects to the instant case, it is insufficient and will not withstand a motion to strike." *Davison Design & Development Inc. v. Riley*, No. 11-CV-2970, 2012 WL 4051189, at *1 (N.D. Cal. Sept. 13, 2012). Striking insufficient defenses allows the parties "to avoid the expenditure of time and money that must arise from litigating spurious issues." *See Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994).

## ARGUMENT

**I.    Volterra's Claims and Defenses of Invalidity Remain Entirely Conclusory and Should Be Dismissed and Stricken.**

**A.    Volterra Made No Meaningful Changes to Its Invalidity Counterclaims, Which Still Provide Absolutely No Information About Their Factual Bases.**

In its original Answer, Volterra asserted a counterclaim requesting a declaratory judgment of invalidity as to each of the four patents-in-suit: "Volterra requests a declaration from the Court that each claim of the '730 patent is invalid for failure to comply with one or more of the requirements and conditions for patentability set forth in the patent laws, 35 U.S.C. §§ 100 *et seq.*, including, but not limited to, 35 U.S.C. §§ 101, 102, 103, and 112." (Ans. ¶ 133.) Volterra made an identical and equally conclusory allegation regarding each of the other three asserted patents. (*Id.* ¶¶ 140, 147, 154.) This Court correctly dismissed these counterclaims for failure to plead facts that would make them plausible. Dkt. No. 198 at 1. Indeed, Volterra pled no facts whatsoever.

In that regard, nothing has changed in Volterra's Amended Answer.   Rather than amending to add ***facts*** as the Court's order required, Volterra merely added a general description of the relevant ***statutes*** cited in the original Answer:

1

2

3

4

5

6

Volterra requests a declaration from the Court that each claim of the '730 patent Infineon is asserting in this action is invalid for failure to comply with one or more of the requirements and conditions for patentability set forth in the patent laws, 35 U.S.C. §§ 100 *et seq.*, including, but not limited to, 35 U.S.C. §§ 101, 102, 103, and 112 **because, for example, they (i) lack patentable subject matter (Section 101), (ii) are not new or novel in light of the prior art (section 102(a), (b), (e)), (iii) are obvious in light of the prior art (Section 103), and/or (iv) are indefinite, fail to provide an adequate written description or fail to enable on of skill in the rat to make and use the alleged inventions described and claimed in the '730 patent (Section 112).**

7   (FAA ¶ 133 (emphasis added).)  Tellingly, Volterra still offers an identical "explanation" of the

8   invalidity of each of the four asserted patents, despite the differences in the inventions covered by

9   each one.  (FAA ¶¶ 133, 140, 147, 154.)

10          Beyond the mere legal conclusion that each patent is invalid, Volterra still offers no real

11   explanation of the basis of its counterclaim.  Even what little information is provided—Volterra's

12   half-hearted attempt to specify the legal basis of its conclusory claims—is no more than

13   boilerplate.  Volterra first points vaguely to the entirety of federal patent law, then gives a handful

14   of non-exhaustive examples of potentially applicable statutory provisions.  The addition of an

15   explanation of the general nature of each of those statutory provisions does not satisfy Volterra's

16   pleading obligations.   "A reference to a doctrine, like a reference to statutory provisions, is

17   insufficient notice."  *Qarbon*.com, 315 F. Supp. 2d at 1049.  While Volterra uses more words

18   than before, its Amended Answer is still "simply pleading the statute to allege patent invalidity,"

19   an approach that has been held "'radically insufficient.'" to provide fair notice.  *PB Farradyne,*

20   *Inc. v. Peterson*, No. 05-CV-3447, 2006 WL 132182, at *3 (N.D. Cal. Jan. 17, 2006) (quoting

21   *Qarbon.com*, 315 F. Supp. 2d at 1050-51).

22          As a result, even if Infineon were somehow able to guess which "one or more" of these

23   provisions Volterra believes invalidate each of the four asserted patents, Infineon could still only

24   speculate as to the basis for Volterra's invalidity claims.  Infineon was already well aware of the

25   contents of 35 U.S.C. §§ 101, 102, 103, and 112.  What Infineon did not know—and still does not

26   know—is what plausible factual basis Volterra has for asserting a claim of invalidity under any of

27   these provisions.  Despite the Court's order, Volterra still provides no facts that would plausibly

28   support its claims.  At best, the added material recites only "legal conclusions couched as factual

allegations," *see Twombly*, 550 U.S. at 555, which cannot sustain Volterra's claims, *see Iconfind, Inc. v. Google, Inc.*, No. 11-CV-319, 2011 WL 4505779, at *1 (E.D. Cal. Aug. 2, 2011) (rejecting similar pleading of the contents of the statute as being "comprised solely of legal conclusions and/or conclusory factual allegations").

For example, Volterra asserts that the asserted claims lack patentable subject matter, which amounts to a bare legal conclusion that the claims are invalid under 35 U.S.C. § 101.  *See id.* ("This conclusory allegation is insufficient under the pleading standard since it does not contain factual allegations sufficient to support drawing a reasonable inference that [the] patent does not contain patentable ideas."); *Proctor & Gamble Co. v. Team Techs., Inc.*, No. 12-CV-552, 2012 WL 6001753, at *2 (S.D. Ohio Nov. 30, 2012) (finding that "bare allegation that the subject matter of the patents-in-suit is non-statutory" provides "no notice whatsoever of the factual basis for Team Tech's allegation that the patents-in-suit do not concern patent-eligible subject matter"). Indeed, Volterra does not identify even one example of allegedly unpatentable subject matter in any of the asserted claims.[1]   Similarly, Volterra asserts that the asserted claims are not new or novel in light of the prior art, which amounts to an unsupported legal conclusion that the claims are invalid under 35 U.S.C. § 102.  *See Iconfind*, 2011 WL 4505779, at *1.  But Volterra does not identify even one example of the prior art that it alleges anticipate the asserted claims.  Volterra's allegations regarding Sections 103 and 112 likewise allege only the content of a statutory subsection and make a conclusory assertion of invalidity under that subsection, but nowhere allege any facts to allow that inference to be plausibly drawn.  *See id.*

In short, Volterra's bald assertion of invalidity "does not articulate the claimed invalidity, identify which, if any, of the statutory provisions apply, or provide any factual support to make the counterclaims plausible."  *See Cleversafe, Inc. v. Amplidata, Inc.*, No. 11-CV-4890, 2011 WL 6379300, at *1 (N.D. Ill. Dec. 20, 2011).  When faced with invalidity counterclaims that plead statutes rather than facts, as Volterra's do, numerous courts have granted motions to dismiss.  *See,*

---

[1] Infineon questions whether Volterra has any good faith basis for asserting invalidity under 35 U.S.C. § 101, given that patent-eligible subject matter includes "anything under the sun that is made by man."  *Diamond v. Chakrabarty*, 447 U.S. 303, 309 (1980).

1   *e.g.*, *Pagemelding*, 2012 WL 3877686, at *3 (dismissing counterclaim alleging that "[o]ne or

2   more claims of the [asserted] patent are invalid for failing to comply with one or more of the

3   requirements of the Patent Laws of the United States, 35 U.S.C. §§ 100 *et seq.*, including, but not

4   limited to, §§ 101, 102, 103, and/or 112"); *Iconfind*, 2011 WL 4505779, at *1 (dismissing

5   counterclaim alleging that claims "are invalid under 35 U.S.C. § 101 because they fail to claim

6   patentable subject matter insofar as each seeks to claim an abstract idea; [and] because they fail to

7   meet the 'conditions for patentability' of 35 U.S.C. §§ 102, 103, and/or 112 because the claims

8   lack utility, are taught by, suggested by, and/or obvious in view of, the prior art; and/or are not

9   adequately supported by the written description of the patented invention"); *Qarbon.com*, 315

10  F.Supp.2d at 1050-51 (dismissing invalidity counterclaim that merely "[pled] the citation" by

11  alleging that the patent-in-suit was "invalid and void under the provisions of Title 35, United

12  States Code §§ 100 *et seq.*, and specifically, §§ 101, 102, 103, and/or 112 . . .", and finding that it

13  was "radically insufficient" because it failed to give "fair notice" to the plaintiff); *Sorensen v.*

14  *Spectrum Brands, Inc.*, No. 09-CV-58, 2009 WL 5199461, at *1 (S.D. Cal. Dec. 23, 2009) ("This

15  threadbare statement is precisely the type of allegation that is insufficient to state a claim under

16  the *Iqbal* standard."); *Groupon Inc. v. MobGob LLC*, No. 10-CV-7456, 2011 WL 2111986, at *4-

17  5 (N.D. Ill. May 25, 2011) (dismissing invalidity counterclaim where, "rather than providing

18  Groupon with notice of the basis for its claims, [the accused infringer] simply cites a whole series

19  of statutory provisions that address a number of topics").

20       Despite the requirement that it have a reasonable basis to assert these counterclaims,

21  Volterra once again failed to plead even the most basic information about its invalidity theories.

22  Volterra's invalidity counterclaims, which offer no more than threadbare legal conclusions, fail as

23  a matter of law and should once again be dismissed.  *See Iqbal*, 556 U.S. at 678 ("Threadbare

24  recitals of the elements of a cause of action, supported by mere conclusory statements, do not

25  suffice.")  This time, however, the dismissal should be with prejudice.

26       The court has broad discretion to deny leave to amend "due to undue delay, bad faith or

27  dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments

28  previously allowed, undue prejudice to the opposing party by virtue of allowance of the

amendment, and futility of the amendment." *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009) (internal quotation marks and alterations omitted).  That discretion is "particularly broad" where a party "has previously been granted leave to amend and has subsequently failed to add the requisite particularity to its claims." *Id.*  In this case, Volterra has made no serious effort to correct the lack of factual allegations that the Court already found fatal to its invalidity counterclaims.  The allegations Volterra added that parrot the statutory language do not even arguably constitute factual allegations under *Iqbal* and *Twombly*.  The fact that Volterra failed to add any real factual matter in its amendment is a "strong indication that [it has] no additional facts to plead," meaning that further leave to amend would be futile.  *Id.*  If, on the other hand, Volterra does have additional facts it could have pled, its paltry amendment would likewise justify denying leave to amend on the basis of apparent "bad faith" or "dilatory motive." Having made no meaningful amendment when given the chance, Volterra should not be given another opportunity.  *See Diamond State Ins. Co.*, 2012 WL 6680259, at *12 ("Because the Court has previously granted leave to amend this counterclaim, this dismissal is without leave to amend.").  Accordingly, Volterra's invalidity counterclaims should be dismissed with prejudice.

> **B.      Volterra's Second Affirmative Defense Mirrors Its Threadbare Counterclaim and Does Not Provide Fair Notice.**

Volterra's invalidity affirmative defense (Second Affirmative Defense) contains no more specific information than the conclusory invalidity counterclaim discussed above.  The defense merely asserts that "[o]ne or more claims" of the asserted patents are invalid or unenforceable because they fail to comply with "one or more of the requirements of 35 U.S.C. §§ 101, 102, 103 and/or 112."  (FAA 36.)  The only further explanation given amounts to legal conclusions that parrot the relevant statutory subsections, as discussed above.  In essence, this defense is nothing more than a naked assertion of a series of legal conclusions.  *See Iqbal*, 556 U.S. at 678.  A bare reference to a handful of statutory provisions and their contents does not give meaningful notice of the legal or factual basis of Volterra's allegations of invalidity.  *See Iconfind*, 2011 WL 4505779, at *1 (striking invalidity affirmative defense "comprised solely of legal conclusions and/or conclosry factual allegations" that merely referenced the doctrines underlying various

1  listed statutory subsections); *Groupon*, 2011 WL 2111986, at *4 (striking invalidity affirmative

2  defense that "simply cites a whole series of statutory provisions").  Volterra's Second Affirmative

3  Defense should therefore be stricken.  Given Volterra's stubborn refusal to plead any facts in

4  support of its invalidity defense despite this Court's prior order, the defense should be stricken

5  without leave to amend.  *See Ansari v. Electronic Document Processing, Inc.*, No. 12-CV-1245,

6  2013 WL 664676, at *5 (N.D. Cal. Feb. 22, 2013) (denying leave to amend stricken affirmative

7  defenses where leave to amend was previously granted but amendments failed to cure the

8  previously identified deficiencies).

9  **II.**   **Volterra's Claims and Defenses of Indirect Noninfringement Lack Any Supporting Factual Allegations and Should Be Dismissed and Stricken.**

10

11        **A.**   **Volterra's Noninfringement Counterclaims Are Devoid of Any Real Factual Content.**

12        For each patent, Volterra "requests a declaration from the Court that it has not infringed,

13  and is not infringing, any valid claim of the [particular] patent, directly or indirectly, and either

14  literally or by application of the doctrine of equivalents."  (FAA ¶¶ 132, 139, 146, 153.)  This

15  Court previously dismissed Volterra's direct and indirect noninfringement counterclaims.  Dkt.

16  No. 198, at 2.  The Court found that while Volterra's direct noninfringement claims were

17  governed by Form 18, its indirect noninfringement claims were subject to the plausibility

18  standard of *Iqbal* and *Twombly*.  *Id.*  Those were dismissed because Volterra failed to plead

19  sufficient facts to support its indirect noninfringement counterclaims.  Yet Volterra's amendment

20  does not cure this deficiency in its claims of indirect noninfringement.

21        Indirect infringement comes in two forms: inducement and contributory infringement.  A

22  party is liable for inducement under 35 U.S.C § 271(b) if it "knowingly induced infringement and

23  possessed specific intent to encourage another's infringement."  *ACCO Brands Inc. v. ABA Locks*

24  *Mfg. Co.*, 501 F.3d 1307, 1312 (Fed. Cir. 2007).  Under 35 U.S.C. § 271(c), an "act of

25  contributory infringement may include either the sale of a 'component of a patented machine,

26  manufacture, combination, or composition' . . . or the sale of a 'material or apparatus for use in

27  practicing a patented process.'"  *Arris Group, Inc. v. British Telecommunications PLC*, 639 F.3d

28  1368, 1376 (Fed. Cir. 2011) (quoting § 271(c)).  In addition, the product sold by the alleged

1   infringer must be "material to practicing the invention, [have] no substantial non-infringing uses,

2   and [be] known by the party to be especially made or especially adapted for use in an

3   infringement of such patent."  In re *Bill of Lading Transmission & Processing Sys. Litig.*, 681

4   F.3d 1323, 1337 (Fed. Cir. 2012) (internal quotation marks omitted).

5        Volterra does not address the elements of inducement or the elements of contributory

6   infringement in its counterclaims.  Instead, Volterra now merely explains that it does not directly

7   or indirectly infringe "because no [accused] Volterra product meets each and every limitation of

8   any asserted claim of the [particular] patent either literally or by application of the doctrine of

9   equivalents."  (FAA ¶¶ 130, 137, 144, 151.)   Simply reciting a boilerplate legal test for

10  noninfringement is insufficient.  *See Iqbal*, 556 U.S. at 678 ("Threadbare recital of the elements

11  of a cause of action, supported by mere conclusory statements, do not suffice.")  Volterra does not

12  offer any factual allegations to back up this bare assertion of a legal conclusion, however, which

13  is repeated for each of the four asserted patents.[2]  This amounts to nothing more than a "naked

14  assertion[] devoid of further factual enhancement," which cannot sustain Volterra's claims.  *Id.*

15  (internal quotation marks and alterations omitted).   No information is provided that would

16  plausibly suggest that the accused products do not in fact meet all of the limitations of the

17  asserted claims.  In fact, Volterra does not even identify a single limitation in a single asserted

18  claim that it asserts its products do not meet, much less facts that would make such an assertion

19  plausible.

20       Nor has Volterra "alleged any facts, that if true, would lead to a reasonable inference that

21  it did not intend another party to infringe" the asserted patents, supporting its claim that it does

22  not induce infringement.   *Pagemelding*, 2012 WL 3877686, at *3 (dismissing indirect

23  noninfringement counterclaim lacking plausible factual allegations).  Likewise, no facts are pled

24  plausibly suggesting that Volterra's accused products are not a "material or apparatus for use in

_____

25  [2]  In its counterclaim for the '730 Patent, Volterra additionally alleges that Infineon has been
26  unable to provide satisfactory infringement contentions.  The parties' discovery dispute regarding
    the sufficiency of Infineon's disclosures cannot substitute for factual allegations regarding
27  Volterra's products and customer interactions that would make its indirect noninfringement
    counterclaims plausible.  Moreover, this additional "factual allegation" is made as to only one
28  of the four asserted patents.

1   practicing a patented process," *Arris Group*, 639 F.3d at 1376, supporting its claim that it does

2   not contributorily infringe the asserted patents.   As such, Volterra's indirect noninfringement

3   counterclaims amount to nothing more than "labels and conclusions," and should be dismissed.

4   *See Iqbal*, 556 U.S. at 678.   Because Volterra was given an opportunity to add factual allegations

5   supporting its indirect infringement counterclaims but failed to add anything more than

6   conclusory statements, these counterclaims should be dismissed with prejudice.   *See Diamond*

7   *State Ins. Co.*, 2012 WL 6680259, at *12 ("Because the Court has previously granted leave to

8   amend this counterclaim, this dismissal is without leave to amend.")

9         **B.**     **Volterra's Conclusorily Pled First Affirmative Defense Suffers from the Same**

10                   **Flaw.**

11       Volterra's noninfringement affirmative defense (First Affirmative Defense) contains no

12   more specific information than the conclusory counterclaims discussed above.   That defense

13   asserts without elaboration that "Volterra's making, use or sale of its products" does not indirectly

14   infringe any claim of any of the asserted patents, either directly or indirectly "because they do not

15   meet each and every limitation of any valid claim of any of the patents-in-suit either literally or

16   under the doctrine of equivalents."   Like Volterra's deficient noninfringement counterclaims, this

17   defense is nothing more a legal conclusion masquerading as a factual allegation, which does not

18   provide "fair notice" as interpreted by *Iqbal* and *Twombly*.   *See Pagemelding*, 2012 WL 3877686,

19   at *3 ("Notice requires more than legal conclusions; factual allegations must establish a right to

20   relief that is 'beyond the speculative level.'" (quoting *Twombly*, 550 U.S. at 555)).   Thus,

21   Volterra's First Affirmative Defense should be stricken to the extent it asserts a defense of

22   indirect noninfringement.   Having failed to correct this previously identified deficiency, Volterra

23   should not be granted leave to amend.   *See Ansari*, 2013 WL 664676, at *5 (denying leave to

24   amend stricken affirmative defenses where leave to amend was previously granted).

III.   **Volterra's Equitable "Catch-all" Affirmative Defense Is Improper and Inadequately Pled.**

   A.   **Volterra's Fifth Affirmative Defense Improperly Lumps Together Numerous Separate Defenses in an Effort To Mask Its Failure to Plead Supporting Factual Allegations for Each One.**

In Volterra's original Answer, Volterra's Sixth, Seventh, Eighth, and Ninth Affirmative Defenses recited that "Plantiff's claims are barred in whole or in part by the doctrine of" and then listed the name of a doctrine—laches, unclean hands, waiver, and equitable estoppel, respectively. (Ans. 35.)  In each case, Volterra did not plead any facts to make the assertion plausible.  Volterra did not mention the elements of these defenses, much less plead facts that would address those elements.  As a result, the Court struck these defenses for failure to provide "fair notice of the bases of the defenses asserted."  Dkt. No. 198 at 3 (internal quotation marks omitted).

Rather than amend each of these separate defenses to address their elements with plausible factual allegations, Volterra now rolls all of these separate doctrines into the Fifth Affirmative Defense—a single "catch-all" defense, which it labels "Equitable Defenses."  (FAA 37.)  The defense states that "Plaintiff's claims are barred in whole or in part by one or more of the doctrines of equitable estoppel, laches, unclean hands, waiver and/or other applicable equitable defenses."  (*Id.*)  As an initial matter, this defense fails to provide fair notice because it is impossible to tell precisely what defenses are being asserted.  Volterra merely states that it is asserting "one or more" of the listed doctrines.  Worse still, one of those doctrines is "other applicable equitable defenses," which appears to be an improper attempt to reserve the right to assert some as-yet-unnamed equitable defense in the future without seeking leave to amend.  *See J&J Sports Prods., Inc. v. Mendoza-Govan*, No. 10-CV-5123, 2011 WL 1544886, at *7 (N.D. Cal. Apr. 25, 2011) ("An attempt to reserve affirmative defenses for a future date is not a proper affirmative defense in itself.").

Furthermore, Volterra's lumping together of these separate defenses violates the rule that each defense should be stated separately.  *See* Fed. R. Civ. P. 10(b) ("If doing so would promote clarity, each claim founded on a separate transaction or occurrence—and ***each defense other than a denial—must be stated in a separate count or defense***." (emphasis added)); *see also Lynch v. Cont'l Group, Inc.*, No. 12-CV-21648, 2013 WL 166226, at *4 (S.D. Fla. Jan. 15, 2013) (finding

that laches, waiver, estoppel, and unclean hands should each be "pled as a separate defense," rather than "rolled into . . . one defense").  As a result, it is difficult to tell which factual allegations support which affirmative defenses, the elements of which are not addressed.  "[F]air notice requires more than simply pointing to the general subject matter of the defense.  Instead, fair notice requires sufficient factual matter, accepted as true, beyond simply conclusory statements, to state the elements of a defense." *Diamond State Ins. Co.*, 2012 WL 6680259, at *17.

Volterra also improperly lumps together the asserted patents, such that Infineon cannot tell which defenses apply to which patents or the factual underpinnings as to each separate patent. Volterra's grouping of these defenses appears calculated to obscure the lack of sufficient allegations to support each separate defense as to each separate patent.  For these reasons alone, Volterra's Fifth Affirmative Defense fails to provide fair notice of its bases and should be stricken.

### B.  The Scant Factual Allegations Do Not Address the Elements of the Listed Defenses and Fail to Provide Fair Notice.

At a minimum, a pleading must set out the elements of each affirmative defense and some factual allegations that plausibly demonstrate that each element is satisfied.  *See, e.g.*, *Qarbon.com*, 315 F. Supp. 2d at 1049-50; *see also Twombly*, 550 U.S. at 562 (holding that the complaint must set forth "direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory").  Volterra has not done so.  After listing all of the doctrines, Volterra alleges essentially two facts: (1) that Infineon waited too long to file this action, and (2) that Infineon improperly used protected discovery from another action in bringing and prosecuting this action.  These scant factual allegations do not plausibly establish all the elements of all of the asserted defenses.

### 1.  Equitable Estoppel

In order to establish equitable estoppel, a defendant must show: (1) the patentee, through misleading words, conduct, or silence, led the alleged infringer to reasonably infer that the patentee did not intend to enforce its patent against the alleged infringer; (2) the alleged infringer

1  relied on that conduct; and (3) due to its reliance, the alleged infringer will be materially

2  prejudiced if the patentee is allowed to proceed with its claim.  *A.C. Aukerman Co. v. R.L.*

3  *Chaides Const. Co.*, 960 F.2d 1020, 1028 (Fed. Cir. 1992) (en banc).  Moreover, "the alleged

4  infringer must have knowledge of the patentee and its patent and must reasonably infer that the

5  patentee acquiesced to the allegedly infringing activity for some time."  *Winbond Elec. Corp. v.*

6  *Int'l Trade Comm'n*, 262 F.3d 1363, 1374 (Fed. Cir. 2001).  Although Volterra alleges that

7  Infineon delayed in filing this action, it does not allege any facts plausibly suggesting that it knew

8  of the asserted patents during that time.  In fact, elsewhere in the Answer, Volterra admits only

9  that it was aware of the four patents-in-suit as of at least January 21, 2010, which is the same day

10  Infineon filed this action.  (FAA 10, 15, 23, 28.)  Furthermore, Volterra does not allege any facts

11  addressing reliance, much less material prejudice resulting from that reliance.

12  Volterra does not even specify whether its equitable estoppel defense applies to all or

13  merely some of the asserted patents.  Because the facts regarding delay and Volterra's knowledge

14  will be specific to each asserted patent, Volterra must allege facts plausibly suggesting equitable

15  estoppel for each of the four asserted patents if it intends to assert this defense against all four.

16  In addition, this defense is subject to the heightened pleading requirement of Rule 9(b).

17  When a pleading alleges fraudulent conduct, Rule 9(b) requires that it "state with particularity the

18  circumstances constituting fraud."  Fed. R. Civ. P. 9(b).  The Rule is triggered by claims that are

19  "grounded in fraud" or "sound in fraud."  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103-04

20  (9th Cir. 2003).  Fraud can be averred "by alleging facts that necessarily constitute fraud (even if

21  the word 'fraud' is not used)."  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009).

22  Where Rule 9(b) applies, the pleading standard is extremely stringent.  "Averments of fraud must

23  be accompanied by 'the who, what, when, where, and how' of the misconduct charged."  *Id.*

24  (quoting *Vess*, 317 F.3d at 1106).  Indeed, the pleading must "set forth *more* than the neutral facts

25  necessary to identify the transaction."  *Id.*

26  Volterra's equitable estoppel defense is subject to Rule 9(b)'s particularity requirement.

27  As discussed above, reliance on misleading conduct is a core element of equitable estoppel.  *See*

28  *Aspex Eyewear, Inc. v. Clariti Eyewear, Inc.*, 605 F.3d 1305, 1310 (Fed. Cir. 2010).  For this

1   reason, district courts have concluded that equitable estoppel must be pled with particularity

2   under Rule 9(b).  *See, e.g.*, *Barnes & Noble, Inc. v. LSI Corp.*, 849 F. Supp. 2d 925, 940-41 (N.D.

3   Cal. 2012); *Bayer CropScience AG v. Dow AgroSciences LLC,* No. 10-CV-1045, 2011 WL

4   6934557, at *3 (D. Del. Dec. 30, 2011).  Because Volterra has not even provided facts plausibly

5   addressing all the elements of equitable estoppel, Volterra necessarily fails to identify the

6   allegedly misleading conduct by Infineon with the specificity demanded by Rule 9(b).

7                   **2.       Laches**

8           For a defense of laches, the defendant has the burden of proving that: (1) the plaintiff

9   delayed in filing suit for an unreasonable and inexcusable length of time after the plaintiff knew

10  or reasonably should have known of its claim against the defendant; and (2) the defendant

11  suffered material prejudice or injury as a result of the plaintiff's delay.  *A.C. Aukerman Co.*, 960

12  F.2d at 1032.  Beyond the conclusory assertion that Infineon's alleged delay operated to the

13  "detriment of Volterra and its customers," Volterra offers no factual allegations plausibly

14  suggesting that it suffered material prejudice or injury.  Nor does it offer any allegations

15  regarding what the nature of that prejudice might be.

16          Moreover, Volterra's blanket assertion does not specify whether its laches defense applies

17  to all or merely some of the asserted patents.  Because any alleged delay will depend on the date

18  when Infineon's claims accrued, Volterra must allege facts plausibly suggesting laches for each

19  of the four asserted patents if it intends to assert this defense against all four.

20                  **3.       Unclean Hands**

21          Under the doctrine of unclean hands, "plaintiffs seeking equitable relief must have acted

22  fairly and without fraud or deceit as to the controversy in issue."  *Adler v. Federal Republic of*

23  *Nigeria*, 219 F.3d 869, 876-77 (9th Cir. 2000) (internal quotation marks omitted).  "Bad intent is

24  the essence of the defense of unclean hands."  *Dollar Sys. v. Avcar Leasing Sys.*, 890 F.2d 165,

25  173 (9th Cir. 1989).  Accidental, inadvertent, or even grossly negligent behavior does not support

26  the application of the doctrine, *id.*, which is reserved for "egregious misconduct."  *See*

27  *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1287 (Fed. Cir. 2011) (noting that

28  "unclean hands cases before the Supreme Court dealt with particularly egregious misconduct"

1   and "involved deliberately planned and carefully executed schemes to defraud not only the PTO

2   but also the courts" (internal quotation marks and alterations omitted)).   The defense applies

3   "only if the court is left with a firm conviction that the defendant acted with a fraudulent intent."

4   *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 842 (9th Cir. 2002).   "An unclean

5   hands defense further requires proof that the offending conduct materially prejudiced a party's

6   ability to defend itself."   *Hynix Semiconductor Inc. v. Rambus, Inc.*, 591 F. Supp. 2d 1038, 1067

7   (N.D. Cal. 2006), *rev'd on other grounds*, 645 F.3d 1336 (Fed. Cir. 2011); *see also Republic*

8   *Molding Corp. v. B. W. Photo Utilities*, 319 F.2d 347, 349-50 (9th Cir. 1963) (finding "the extent

9   of actual harm caused by the conduct in question" to be a "highly relevant consideration" in

10  applying the unclean hands defense); *PenneCom B.V. v. Merrill Lynch & Co.*, 372 F.3d 488, 493

11  (2d Cir. 2004) (unclean hands defense requires proof that plaintiff "has injured the party

12  attempting to invoke the doctrine").

13      It appears that Volterra may be basing its unclean hands defense on its allegation that

14  Infineon has improperly used information from the Volterra action.   That accusation, however,

15  does not satisfy all the elements of an unclean hands defense.   Volterra alleges no facts addressing

16  whether Infineon acted with the necessary fraudulent intent—as opposed to inadvertence or even

17  gross negligence—in its alleged improper use of the information.   Nor is it clear from the facts

18  alleged that the "use" Volterra pleads rises to the level of egregious conduct, as opposed to a mere

19  technical violation of the protective order.   *See In re Dual-Deck Video Cassette Recorder*

20  *Antitrust Litig.*, 10 F.3d 693, 695-96 (9th Cir. 1993) (finding "harmless technical violations"

21  where plaintiff "'used' information in violation of the protective order that it would not have

22  discovered so easily but for the protective order, just by filing another lawsuit and litigating" but

23  was not accused of "revealing any secrets").   Furthermore, Volterra does not allege any prejudice

24  to its ability to defend this action flowing from Infineon's alleged use.

25      Moreover, Volterra accusation lacks sufficient factual detail to nudge the defense "across

26  the line from conceivable to plausible."   *Iqbal*, 556 U.S. at 680.   Volterra offers no specifics of

27  what information was allegedly used or in what specific way.   The "well-pleaded facts do not

28  permit the court to infer more than the mere possibility of misconduct," which is insufficient.

1    Such threadbare allegations cannot be used to unlock the doors to discovery.  That is especially

2    true with an accusation such as this one, which raises the specter of harassing discovery into

3    counsel's pre-filing investigation and conduct of the litigation, as well as invasion of the attorney-

4    client and work product privileges.  Absent some articulated basis to make Volterra's unclean

5    hands defense plausible, Infineon should not be subjected to such burdensome discovery.  *See id.*

6    at 685 ("It is no answer to say that a claim just shy of a plausible entitlement to relief can, if

7    groundless, be weeded out early in the discovery process.").

8        Although Volterra's vague allegations are by no means clear, it appears that Volterra may

9    be accusing Infineon of fraudulent conduct.  As such, Volterra was required to plead its defense

10   in conformity with Rule 9(b).  *See Powertech*, 2012 WL 1746848, at *5 (finding that unclean

11   hands defense "involving fraud or mistake" must satisfy Rule 9(b)); *see also Mittelstaedt v.*

12   *Gamla-Cedron Orleans LLC*, No. 12-CV-5131, 2012 WL 6188548, at *4 (N.D. Ill. Dec. 21,

13   2012) ("If an unclean hands defense is predicated on allegations of fraud, the affirmative defense

14   must be alleged with the particularity required by Federal Rule of Civil Procedure 9(b).").  Rule

15   9(b) requires a specific identification of "the who, what, when, where, and how of the misconduct

16   charged."  *Kearns*, 567 F.3d 1120, 1124 (9th Cir. 2009) (internal quotation marks omitted).  As

17   discussed above, Volterra's threadbare allegations lack sufficient factual detail to satsify even the

18   plausibility standard of *Iqbal* and *Twombly*, much less the more stringent pleading standard of

19   Rule 9(b).

20                        **4.    Waiver**

21       "Waiver is the intentional relinquishment of a known right with knowledge of its

22   existence and the intent to relinquish it."  *United States v. King Features Entm't, Inc.*, 843 F.2d

23   394, 399 (9th Cir. 1988).  Volterra alleges that Infineon delayed in filing this action, but does not

24   allege any facts plausibly suggesting that Infineon relinquished its rights to do so, much less did

25   so with the necessary intent.

26       Here again, Volterra's blanket assertion does not specify whether its waiver defense

27   applies to all or merely some of the asserted patents.  Waiver as to one asserted patent would not

28   necessary imply waiver as to any other asserted patent.  Furthermore, any alleged delay will

depend on the date when Infineon's claims accrued.  Thus, Volterra must allege facts plausibly suggesting waiver for each of the four asserted patents if it intends to assert this defense against all four.

In short, by lumping all four of these disparate defenses into one catch-all defense, Volterra has failed to allege facts that plausibly satisfy each element of each defense it is asserting, as is required to provide fair notice.  *See Twombly*, 550 U.S. at 562 (holding that the complaint must set forth "direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory").  Likewise, by lumping together all of the asserted patents for purposes of its defenses, Volterra has failed to provide fair notice of which defenses apply to which patents, as well as what facts support those assertions.  Accordingly, Volterra's Fifth Affirmative Defense should be stricken.   When given the opportunity to amend each of these defenses to assert sufficient facts, Volterra instead rolled them into one defense to avoid addressing the elements and to mask the insufficiency of the facts alleged.  As such, these defenses should be stricken without leave to amend.  *See Diamond State Ins. Co.*, 2012 WL 6680259, at *18 ("Because the Court has previously granted Marin leave to amend to remedy the deficiencies in its counterclaims and affirmative defenses and it has been unable to do so, the Court dismisses the counterclaims and strikes the estoppel and unclean hands affirmative defenses without granting Marin leave to amend.").

## IV.   Volterra Added No Real Factual Content to Its Fourth Affirmative Defense That Would Provide Fair Notice.

In its original Answer, Volterra asserted that the defense of prosecution history estoppel applies to "one or more" of the four asserted patents, without identifying anything in the prosecution history of any of the four patents.  (Answer 35.)  This Court struck that affirmative defense for failing to provide fair notice of the basis of the defense.  Dkt. No. 198 at 3.  Volterra's Amended Answer fares no better.  The defense now reads: "***In light of statements made during the prosecution of the patents-in-suit or related applications***, prosecution history estoppel on one or more of [the four asserted patents] bars Planitiff's proposed claim constructions and/or bars Plaintiff from proving infringement on the asserted claims under the doctrine of

1   equivalents." (FAA 36 (emphasis added).) The added language merely states the obvious—that

2   Volterra's prosecution history estoppel defense is based on statements made in the prosecution

3   history. The same could be said about any prosecution history estoppel defense in any lawsuit.

4   Volterra's amendment is mere boilerplate, which still fails to provide fair notice of the basis of its

5   defense. In fact, Volterra still does not identify even one relevant statement in the prosecution

6   history of even one of the four asserted patents. Moreover, Volterra intentionally obscures which

7   of the four patents its defense applies to, much less provide facts plausibly suggesting that the

8   defense applies to each of the four separate patents. Volterra's Fourth Affirmative Defense

9   should be stricken. Given the token nature of Volterra's amendment, the Court should not grant

10   leave to amend a second time. *See Ansari*, 2013 WL 664676, at *5.

11

### CONCLUSION

12       Volterra did not take its opportunity to amend seriously. Rather than add facts suggesting

13   invalidity, it merely added a description of the relevant statutory subsections. Volterra likewise

14   added no real factual allegations to its indirect infringement claims and defenses and its

15   prosection history estoppel defense. And its "catch-all" affirmative defense is plainly an attempt

16   to avoid spelling out the elements of its various equitable defenses. These tactics deprive

17   Infineon of the fair notice of the bases for Volterra's counterclaims and affirmative defenses to

18   which it is entitled under the Federal Rules. For the foregoing reasons, Infineon asks that the

19   Court dismiss Volterra's counterclaims and strike Volterra's affirmative defenses as set forth

20   above without leave to amend.

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

March 15, 2013

By: /s/ *David G. Wille*
Jeffery D. Baxter (Pro Hac Vice)
David G. Wille (Pro Hac Vice)

Baker Botts L.L.P.
2001 Ross Avenue
Dallas, Texas 75201
Telephone: (214) 953-6791

Attorneys for Plaintiff
INFINEON TECHNOLOGIES AG