United States District Court

For the Northern District of California

1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11   INFINEON TECHNOLOGIES AG,              No. C 11-6239 MMC

12            Plaintiff,                    **ORDER GRANTING IN PART AND
                                            DENYING IN PART PLAINTIFF'S
13       v.                                 MOTION TO DISMISS DEFENDANT'S
                                            COUNTERCLAIMS AND STRIKE
14   VOLTERRA SEMICONDUCTOR                 DEFENDANT'S AFFIRMATIVE
     CORPORATION,                           DEFENSES**
15
              Defendant.
16   _____/

17

18       Before the Court is the "Second Motion to Dismiss Volterra's Counterclaims and

19   Strike Volterra's Affirmative Defenses," filed March 15, 2013, by plaintiff Infineon

20   Technologies AG ("Infineon").  Defendant Volterra Semiconductor Corporation ("Volterra")

21   has filed opposition, to which Infineon has replied.  Having read and considered the papers

     submitted in support of and in opposition to the motion, the hereby Court rules as follows.[1]

22                               **DISCUSSION**

23       In the instant action, Infineon alleges Volterra directly and indirectly infringes U.S.

24   Patent Nos. 5,945,730 ("the '730 patent"), 7,095,281 ("the '281 patent"), 5,402,017 ("the

25   '017 patent"), and 6,621,343 ("the '343 patent").  In Volterra's "Amended Answer to

26   [Infineon's] Second Amended Complaint, and Counterclaims" ("AAC"), Volterra asserts four

27

28       _____

         [1] By order filed April 16, 2013, the Court deemed the matter appropriate for decision
     on the parties' respective filings and vacated the hearing scheduled for April 19, 2013.

counterclaims[2] and six affirmative defenses.[3]  Infineon moves to dismiss Volterra's

counterclaims to the extent Volterra seeks declarations of invalidity and indirect non-

infringement; additionally, Infineon moves to strike Volterra's affirmative defenses alleging

invalidity, indirect non-infringement, prosecution history estoppel, and equitable defenses.

### 1. Indirect Non-Infringement

Infineon alleges Volterra indirectly infringes each of the above-referenced four

patents, by inducing infringement by third parties, and, as to two of said patents, by

contributing to such infringement.  In its prior order, the Court dismissed, for failure to plead

sufficient facts, Volterras' counterclaims and affirmative defenses alleging indirect non-

infringement and afforded Volterra leave to amend.  (See Order, filed Feb. 7, 2013, at 2, 4.)

By the instant motion, Infineon argues Volterra again fails to allege facts showing it does

not induce infringement of, or contributorily infringe, its patents.  The Court disagrees.

First, Volterra, in the AAC, now identifies a general category of non-infringing

products for each of Infineon's patents and identifies at least one specified exemplar of a

non-infringing product in each category (see AAC ¶¶ 130, 137, 144, 151),[4] thereby alleging

sufficient facts to plead a claim of direct non-infringement.[5]  Infineon's claims of indirect

infringement by Volterra are, in essence, based on Volterra's alleged direct infringement,

i.e., the sale by Volterra of products that are themselves alleged to be infringing.

(See Second Amended Compl. ¶¶ 32, 52, 84, 104 (alleging Volterra induces infringement

"by offering for sale and selling the infringing Volterra products to third-parties such that

---

[2] Volterra asserts counterclaims of "Declaratory Judgment of Invalidity and Non-Infringement" of each patent asserted by Infineon.  (See AAC ¶¶ 127-154.)

[3] Volterra asserts the following affirmative defenses:  (1) "Non-Infringement," (2) "Invalidity," (3) "Limitations on Damages," (4) "Prosecution History Estoppel," (5) "Equitable Defenses," and (6) "License/Patent Exhaustion."  (See AAC at 35-37.)

[4] Volterra has likewise amended its affirmative defense of non-infringement and now alleges specific categories of products and exemplars of those products that assertedly do not infringe Infineon's patents.  (See AAC at 35:22-36:6.)

[5] Infineon does not argue to the contrary.

2

1   those third-parties may use, offer for sale, sell, and/or import the infringing Volterra

2   products and services in a manner that directly infringes"); id. ¶¶ 62, 114 (alleging "HP,

3   among other customers of Volterra, directly infringe the [ ] patent by making, using,

4   importing, offering to sell, and/or selling the infringing Volterra products, or products that

5   incorporate the infringing Volterra products, in the United States").)  Infineon's indirect

6   infringement claims are not based on the manner in which Volterra markets a non-infringing

7   product to customers who then use such product to produce an infringing product, see DSU

8   Med. Corp. v. JMS Co., Ltd., 471 F.3d 1293, 1305-06 (Fed. Cir. 2006), nor does Infineon

9   allege that Volterra's products are components "especially made or especially adapted for

10  use" in such infringing products, see 35 U.S.C. § 271(c).  A reasonable inference thus can

11  be drawn that Volterra's claims of indirect non-infringement are not based on an allegation

12  that Volterra does not encourage its customers to incorporate Volterra's allegedly infringing

13  products into their own products, but rather are based on the allegation that Volterra's

14  products are non-infringing.

15          Accordingly, the motion will be denied as to Volterra's counterclaims and affirmative

16  defenses of indirect non-infringement.

17          **2. Invalidity**

18          By prior order the Court also dismissed, for failure to plead sufficient facts, Volterra's

19  counterclaims and affirmative defenses of invalidity.  (See Order, filed Feb. 7, 2013, at 1,

20  4.)  To the extent the counterclaims and affirmative defenses are based on 35 U.S.C.

21  §§ 101 and 112, the Court finds the allegations are sufficiently pleaded.  Volterra alleges

22  the patents fail to comply with § 101 for the asserted reason that the patents "lack

23  patentable subject matter" and fail to comply with § 112 for the asserted reason that the

24  patents are "indefinite, fail to provide an adequate written description or fail to enable one of

25  skill in the art to make and use the alleged inventions."  (See AAC at 36:9-15, ¶¶ 133, 140,

26  147, 154.)  With respect to § 101, given the traditional subject matter covered by the

27  patents, it is doubtful anything more can be said.  See Diamond v. Diehr, 450 U.S. 175, 185

28

3

1   (1981) (citing, as examples of non-patentable subject matter, "a new mineral discovered in

2   the earth," "a new plant found in the wild," "the law of gravity").  With respect to § 112,

3   although, technically, the task of proving a negative is not impossible, the Court will not

4   require Volterra, in the context of a pleading, to point to the particular sentences, phrases,

5   or words it asserts are deficient and then to set forth its argument as to what additional

6   information would be necessary to cure such deficiencies.

7          As to Volterra's newly added allegation that the patents fail to comply with §§ 102

8   and 103 for the reason that the patents "are not new or novel in light of the prior art" or "are

9   obvious in light of the prior art" (see AAC at 36:12-13, ¶¶ 133, 140, 147, 154), the Court

10  agrees with Infineon that such generic allegation lacks sufficient factual detail to comply

11  with the Court's prior order.  Given the current posture of the discovery proceedings,

12  however, the Court finds that an order requiring Volterra to plead specific items of prior art

13  would run counter to the orderly progression of discovery delineated in the Patent Local

14  Rules of this district.  In particular, a dispute as to the sufficiency of Infineon's infringement

15  contentions remains pending before the Magistrate Judge hearing discovery matters in the

16  instant case, and said Magistrate Judge's order staying Volterra's invalidity contentions

17  until said dispute is resolved remains in effect.  (See Order, filed Jan. 28, 2013, at 8:10-12.)

18  Under such circumstances, the Court will not require Volterra to amend its invalidity

19  counterclaims and affirmative defenses.

20         Accordingly, the motion will be denied with respect to Volterra's counterclaims and

21  affirmative defenses of invalidity.

22         **3.  Prosecution History Estoppel**

23         As its Fourth Affirmative Defense, Volterra asserts "Prosecution History Estoppel."

24  In the Court's prior order, said affirmative defense was dismissed for failure to provide "fair

25  notice."  (See Order, filed Feb. 7, 2013, at 4:2-3.)  Infineon argues the AAC fails to add

26  sufficient facts to provide fair notice of the basis of the defense.  The Court agrees.

27         Volterra's Fourth Affirmative Defense now reads, as follows:  "In light of statements

28

4

1  made during the prosecution of the patents-in-suit or related applications, prosecution

2  history estoppel on one or more of [the patents-in-suit] bars [Infineon's] proposed claim

3  constructions and/or bars [Infineon] from proving infringement on the asserted claims under

4  the doctrine of equivalents."  (See AAC at 36:23-26.)  The only change Volterra has made

5  is to add the introductory phrase "[i]n light of statements made during the prosecution of the

6  patents-in-suit or related applications."  Such allegation does no more than state the

7  obvious, i.e., that an affirmative defense of prosecution history estoppel is based on

8  statements made by the patent applicant during the prosecution of the patent.  The Court

9  recognizes that Volterra, at this stage of the proceedings, may not have acquired all the

10  information necessary for it to plead the particular representations underlying such a

11  defense.  Nevertheless, at this time, Volterra's pleading remains subject to challenge.  At

12  such time as Volterra has the information necessary to adequately plead such an

13  affirmative defense, it may move to amend its answer.

14       Accordingly, the motion will be granted with respect to Volterra's affirmative defense

15  of prosecution history estoppel.

16       **4. Equitable Defenses**

17       In its prior answer, Volterra asserted the affirmative defenses of Laches, Unclean

18  Hands, Waiver, and Equitable Estoppel, which affirmative defenses were stricken for failure

19  to provide notice of the bases thereof.  In its AAC, Volterra combines all four defenses into

20  its Fifth Affirmative Defense, titled "Equitable Defenses."  (See AAC at 37:3-4 (alleging

21  "[p]laintiff's claims are barred in whole or in part by one or more of the doctrines of

22  equitable estoppel, laches, unclean hands, waiver and/or other applicable equitable

23  defenses").)  In support of all said defenses, Volterra alleges that Infineon "delayed filing

24  this action for an unreasonably long and inexcusable period of time" and that Infineon

25  "improperly used information it learned from discovery in [a different action between the

26  parties] that was subject to a provision in a protective order . . . for the purposes of bringing

27  and prosecuting this action."  (See AAC at 37:5-6, 14-17.)

28

5

1    Such collective pleading is insufficient for a number of reasons. First, Volterra must

2    plead each defense separately, as it is unclear which alleged facts support each asserted

3    defense. See Fed. R. Civ. P. 10(b). Second, Infineon has asserted four patents against

4    Volterra and has not made clear which equitable defense(s) are meant to apply to which

5    patent(s). In amending its affirmative defenses, Volterra must plead each defense

6    separately and plead facts showing how each defense applies to each patent. Additionally,

7    as set forth below, the AAC lacks allegations sufficient to plead certain of the elements of

8    said defenses.

9                                    **a.  Equitable Estoppel**

10    To plead an affirmative defense of equitable estoppel, a party must plead facts

11    showing (1) the patentee "communicate[d] something in a misleading way, either by words,

12    conduct or silence," (2) the alleged infringer "relie[d] upon that communication," and (3) due

13    to its reliance, the alleged infringer "would be harmed materially if the [patentee] [were] later

14    permitted to assert any claim inconsistent with his earlier conduct." See A.C. Aukerman

15    Co. v. R.L. Chaides Const. Co., 960 F.2d 1020, 1041 (Fed. Cir. 1992) (internal citation and

16    quotation omitted). In the AAC, Volterra fails to allege any facts showing how it would be

17    materially harmed. Rather, Volterra alleges such element solely in conclusory terms.

18    (See AAC at 37:5-6 (alleging plaintiff "delayed filing this action for an unreasonably long

19    and inexcusable period of time to the detriment of Volterra and its customers")). If Volterra

20    amends its affirmative defense, it must plead facts showing the manner in which it was

21    harmed by plaintiff's conduct.[6]

22    //

23

24    [6] Infineon's argument that Volterra also must allege Volterra's knowledge of the
       asserted patents is not persuasive, as the authority on which Infineon relies concerns the
25    specific defense of implied license, not, as here, equitable estoppel in its broader form.
       See Winbond Electronics Corp. v. Int'l Trade Comm'n, 262 F.3d 1363, 1374 (Fed. Cir.
26    2001) (holding, in case alleging implied license, alleged infringer must have knowledge of
       patent "for this form of estoppel"). The Court likewise finds unpersuasive Infineon's
27    argument that Volterra must comply with the heightened pleading requirements of Rule
       9(b); the defense, as currently pleaded is not based on fraud.
28

                                              6

### b.  Laches

To adequately plead an affirmative defense of laches, a party must allege facts showing (1) "the plaintiff delayed filing suit for an unreasonable and inexcusable length of time from the time the plaintiff knew or reasonably should have known of its claim against the defendant," and (2) "the delay operated to the prejudice or injury of the defendant." See A.C. Aukerman Co., 960 F.2d at 1032.  Infineon argues Volterra has failed to adequately allege the injury or prejudice it has suffered as a result of Infineon's actions. For the reasons discussed above, the Court agrees.  If Volterra chooses to amend, it must plead facts showing such injury or prejudice.

### c.  Unclean Hands

"The doctrine of unclean hands bars relief to a plaintiff who has violated conscience, good faith or other equitable principles in his prior conduct, as well as to a plaintiff who has dirtied his hands in acquiring the right presently asserted." Seller Agency Council, Inc. v. Kennedy Ctr. for Real Estate Educ., Inc., 621 F.3d 981, 986 (9th Cir. 2010) (internal quotation and citation omitted).[7]  As discussed above, Volterra has not adequately pled facts showing it sustained any injury as a result of Infineon's assertedly inequitable conduct.  See PenneCom B.V. v. Merrill Lynch & Co., Inc., 372 F.3d 488, 493 (2d Cir. 2004) (noting unclean hands doctrine applies where plaintiff has committed an unconscionable act and "has injured the party attempting to invoke the doctrine").  If

_____

[7] Infineon argues the defense only applies where a plaintiff has acted with "fraudulent intent."  (See Mot. at 16:3.)  The Court disagrees.  Although the doctrine of unclean hands requires a showing of more than negligence, see Dollar Sys., Inc. v. Avcar Leasing Sys., Inc., 890 F.2d 165, 173 (9th Cir. 1989) (noting "bad intent is the essence of the defense"), Infineon cites to no case holding such defense always requires a showing of fraud.  Rather, the cases on which Infineon relies are limited to the specific circumstances presented therein.  See Jarrow Formulas, Inc. v. Nutrition Now, Inc., 304 F.3d 829, 842 (9th Cir. 2002) (holding, where plaintiff brought false advertising suit under Lanham Act and sought to counter defense of laches "by alleging that the defendant made claims [about defendant's product] knowing they were false," plaintiff could not "escape laches under the unclean hands doctrine" unless the Court was left with "a firm conviction that the defendant acted with [such] fraudulent intent"); Therasense, Inc. v. Becton, Dickinson & Co., 649 F.3d 1276, 1287-88 (Fed. Cir. 2011) (noting, where unclean hands defense is based on allegation of "inequitable conduct," intent to deceive Patent and Trademark Office must be shown).

1    Volterra chooses to amend, it must plead facts showing the manner in which it was injured.

2                  **d. Waiver**

3           "Waiver is the intentional relinquishment of a known right with knowledge of its

4    existence and the intent to relinquish it."  See United States v. King Features Entm't, Inc.,

5    843 F.2d 394, 399 (9th Cir. 1988).  To establish waiver, a party must show:  "(1) the

6    patentee, through statements or conduct, gave an affirmative grant of consent or

7    permission to make, use, or sell to the alleged infringer; (2) the alleged infringer relied on

8    that statement or conduct; and (3) the alleged infringer would, therefore, be materially

9    prejudiced if the patentee is allowed to proceed with its claim."  See Winbond Electronics

10   Corp., 262 F.3d at 1374.

11          Here, the AAC lacks factual allegations sufficient to plead waiver.  Volterra's

12   allegation that Infineon "has been interested in acquiring Volterra and has been studying

13   Volterra and its products and technology for many years" (see AAC at 37:7-8) does not

14   suffice to show Infineon intentionally relinquished its rights to enforce the patents-in-suit.  If

15   Volterra chooses to amend, it must remedy the said deficiency.

16          Accordingly, the motion will be granted with respect to Volterra's equitable defenses

17   with leave to amend.

18                              **CONCLUSION**

19          1.  Infineon's motion to dismiss and to strike is hereby GRANTED in part and

20   DENIED in part as follows:

21                  a. To the extent the motion seeks an order striking the Fourth Affirmative

22   Defense, the motion is hereby GRANTED, and the Fourth Affirmative Defense is hereby

23   STRICKEN.

24                  b. To the extent the motion seeks an order striking the Fifth Affirmative

25   Defense, the motion is hereby GRANTED, and the Fifth Affirmative Defense is hereby

26   STRICKEN with leave to amend.  Volterra's amended pleading, if any, shall be filed on or

27   before May 22, 2013.

28

                                    8

1        c.  In all other respects the motion is hereby DENIED.

2    **IT IS SO ORDERED.**

3

4    Dated:  May 1, 2013

5                                                  MAXINE M. CHESNEY
                                            United States District Judge

9