UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| INFINEON TECHNOLOGIES AG,<br><br>    Plaintiff(s),<br><br>  v.<br><br>VOLTERRA SEMICONDUCTOR,<br><br>    Defendant(s).<br>_____/ | No. C-11-06239 MMC (DMR)<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO AMEND INFRINGEMENT CONTENTIONS [DOCKET NO. 241] AND GRANTING IN PART DEFENDANT'S MOTION TO STRIKE [DOCKET NO. 244]**<br><br>*Public Version* |

    Plaintiff Infineon Technologies AG filed a motion for leave to amend its infringement contentions to add three accused products to its patent infringement case against Defendant Volterra Semiconductor. [Docket No. 241.] Volterra filed a motion to strike Plaintiff's Third Amended Infringement Contentions ("TAICs"). [Docket No. 244.] For the reasons stated below and during the June 27, 2013 hearing, the motion for leave to add the new models is granted and the motion to strike the TAICs is granted in part and denied in part.

**I. BACKGROUND AND PROCEDURAL HISTORY**

    This case has already involved several rounds of litigation on the issue of Plaintiff's infringement contentions.

    Plaintiff filed suit on January 21, 2010 and amended its complaint on May 18, 2012. [Docket Nos. 1, 86.] On June 4, 2012, Plaintiff served its Initial Infringement Contentions ("IICs"). Volterra filed a motion to strike the IICs. [Docket No. 96.] The court denied the motion without

prejudice, ordered the parties to meet and confer in the courthouse, and provided a deadline for filing amended infringement contentions. [Docket No. 103.]

Shortly thereafter, Plaintiff served its Amended Infringement Contentions ("AICs"), which Volterra again moved to strike. During the pendency of that motion, Plaintiff filed its Second Amended Complaint, which asserts ten causes of action. [Docket No. 130.] Of relevance here, Plaintiff alleges that, in violation of 35 U.S.C. § 271(a), Defendant has infringed Plaintiff's patent (U.S. Patent No. 5,945,730)

> by making, using, importing, offering to sell, and/or selling in the United States ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ the VT237WFQ, VT238AWFQ, VT239WFQ, VT271SFQ, VT1156SFQ, VT1157SFQ, VT1165SFQ, VT1175SFQ, VT1185SFQ, VT1188SFQ, VT1189SFQ, VT1195SFQ, VT1195-001SFQ, VT1196SFQ, and VT1198SFQ [products].

Second Amended Complaint ¶ 20.

On October 3, 2012, the court granted in part and denied in part the motion to strike the AICs. [Docket No. 132.] Plaintiff appealed the order to Judge Chesney on October 12, 2012. [Docket No. 137.] Judge Chesney overruled one of Plaintiff's objections to the order and partially sustained its objection to the other. [Docket No. 150.] On December 11, 2012, the court issued a second order on the motion to strike the AICs pursuant to Judge Chesney's instructions. [Docket No. 162.] One outcome of these orders was that the court found that the AICs failed to achieve the specificity mandated by Patent Local Rule 3-1(c) because they were unclear about the location of the specific structure(s) in the VT1195SFQ product[1] that met the "plurality of [] metal conductors coupled to the [] semiconductor region," "bumps," and "in contact with" limitations of Claim 1[2] of

---

[1] All of Plaintiff's iterations of its infringement contentions include only one claim chart for a single product—the VT1195SFQ—which Plaintiff claims is representative of all other accused products. *See Renesas Tech. Corp. v. Nanya Tech. Corp.*, No. 03-cv-5709 JF (HRL), 2004 WL 2600466 at *4 (N.D. Cal. Nov. 10, 2004) (Patent Local Rule 3-1 does not require a claim chart for every accused product; plaintiff need only provide enough information to "permit a reasonable inference that all accused products infringe"). The question of whether the VT1195SFQ claim chart is representative of the other accused products is addressed below.

[2] Claim 1 of the '730 Patent consists of the following:

1. A semiconductor power device comprising: first and second semiconductor regions,
   a plurality of first metal conductors coupled to the first semiconductor region,
   each of the plurality of first metal conductors having at least one bump in contact

the '730 patent. The court also held that Plaintiff would be permitted to amend its infringement contentions to specifically name other Volterra products beyond the fifteen model numbers in the Second Amended Complaint only if Plaintiff could demonstrate that it could not have identified the newly named products absent discovery when it served its initial infringement contentions. The court ordered Plaintiff to serve Second Amended Infringement Contentions ("SAICs") by November 2, 2012, which Plaintiff did.

However, the SAICs suffered from the same problem: they remained unclear as to which structure(s) in the VT1195SFQ product Plaintiff contended met the limitations in Claim 1 of the '730 patent. Order on Motion to Strike SAICs [Docket No. 193]. Following a hearing, the court ordered Plaintiff to serve Volterra with its Third Amended Infringement Contentions ("TAICs") by February 14, 2013. After Plaintiff served the TAICs, Volterra filed a motion to strike the TAICs on the same basis. [Docket No. 209.] Around the same time, Plaintiff sought leave of court to add three additional model numbers—the VT1626SFQ, VT1526SFQ, and VT1676SFQ—to its infringement contentions.[3] [Docket No. 199 at 8.]

## II. Plaintiff's Motion for Leave to Amend

At the June 27, 2013 hearing, Volterra opted to withdraw its opposition to Plaintiff's motion for leave to amend. Accordingly, the motion for leave to amend is **granted.** Plaintiff may amend its infringement contentions to include the following three products: the VT1626SFQ, VT1526SFQ, and VT1676SFQ.

## III. Defendant's Motion to Strike the TAICs

---

therewith,
   a plurality of second metal conductors coupled to the second semiconductor region, each of the plurality of second metal conductors having at least one bump in contact therewith, and
   a frame formed of high conductivity material, the frame comprising a plurality of first connection portions for connecting to the at least one bumps of the first metal conductors and a plurality of second connection portions for connecting to the at least one bumps of the second metal conductors, the frame providing external connections to the semiconductor regions of the device.

Second Amended Complaint Ex. A ('730 Patent) at 9.

[3] The parties engaged in limited discovery relevant to the motion for leave to amend, resulting in another discovery dispute and order. [Docket No. 232.]

3

Claim 1 of the '730 patent requires the invention to have a "plurality of [] metal conductors" that are "in contact with" the "bumps." Plaintiff's previous infringement contentions were unclear as to which structure or structures of the VT1195SFQ met these limitations. At the hearing on the motion to strike the SAICs on January 24, 2013, Plaintiff's counsel stated for the first time that the infringing structure consisted of ▇▇▇▇▇▇▇. The court ordered Plaintiff "to identify with specificity the ▇▇▇▇▇ that [Plaintiff] is saying infringes the particular limit[ations]." Fisher MTS Decl. [Docket No. 243] Ex. A (Transcript of January 24, 2013 hearing) at 6:10-12. The court gave an example: "If Infineon can clearly state that in the VT1195SFQ, the 'plurality of first [] conductors' means ▇▇▇▇▇▇▇▇▇▇▇▇▇ . . . then I think I would likely rule that to be sufficient." *Id.* at 5:16-22 (emphasis added).

Plaintiff did not opt to amend its infringement contentions with the same specificity as the court's example. Instead, Volterra contends, and Plaintiff does not dispute, the TAICs made only two changes with respect to the three relevant limitations:

- ***First,*** Plaintiff added the phrase "under the bumps" in the annotations next to the birds-eye view images of the VT1195SFQ. The annotations now read: "Infineon contends that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ of the VT1195SFQ comprise 'a plurality of [] metal conductors coupled to the first semiconductor region' as recited in this claim." Fisher MTS Decl. Ex. B (TAICs) Appx. A at 11-12, 24-25 (emphasis added). The annotations have arrows pointing to outlined sections of the images.

- ***Second,*** rather than using an existing cross-section photograph of the product, Plaintiff added a stylized illustration of the cross-section of the VT1195SFQ, showing a product with ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ The accompanying text reads: "Volterra asserts that it cannot determine ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. Fisher MTS Decl. Ex. B Appx. A at 13, 26.

In addition, since serving the TAICs, Plaintiff has proposed adding the following sentence to the text accompanying the illustration:

"The 'metal conductors' are ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇"

Fisher MTS Decl. Ex. P (proposed amendments to TAICs) Appx. A at 13, 26 (emphasis added).

On May 23, 2013, Volterra renewed its motion to strike the TAICs. Volterra raises three principal arguments.[4] *First*, Volterra argues that the TAICs again fail to specifically identify which structure(s) in the VT1195SFQ meets the "plurality of [] metal conductors," "in contact with," and "bumps" limitations in Claim 1 of the '730 patent, and whether ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ meets those limitations. Volterra argues that Infineon's doctrine of equivalents ("DOE") arguments as to Claim 1 further muddy the waters, because they include inconsistent definitions of the relevant "▮▮▮▮▮." *Second*, Volterra argues that the TAICs are inadequate with respect to the dependent claims (Claims 2-8) of the '730 patent, in part because the alleged insufficiency of the infringement assertions with regard to Claim 1 infect Plaintiff's contentions with respect to the dependent claims. *Third*, Volterra argues that the TAICs should be stricken as to all Volterra products other than the VT1195SQF, which is the only product for which Plaintiff provided a claim chart. Volterra asserts that the VT1195SQF claim chart is not representative of the other accused products.

A. "Plurality of [] Metal Conductors"

The TAICs still do not clarify which structure(s) of the VT1195FSFQ product Plaintiff contends meets the "plurality of [] metal conductors" limitations in Claim 1. The primary problem is that Plaintiff's identification of the "plurality of [] metal conductors" as the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮"[5] cannot be squared with two statements in Plaintiff's DOE arguments with respect to Claim 1:

- Plaintiff contends that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Fisher MTS Decl. Ex. B Appx. A at 22, 36.
- Plaintiff's DOE argument with respect to the "in contact" limitation refers ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* at 23,

---

[4] Volterra also argued that the TAICs improperly added the additional model numbers before Plaintiff sought leave of the court to do so. Because Volterra withdrew its opposition to the addition of the three new model numbers, this argument is moot.

[5] Plaintiff has defined the structures in the VT1195SFQ meeting the "plurality of [] metal conductors" limitation in these varying ways. *See* Fisher MTS Decl. Ex. B Appx. A at 11-13, 24-26.

36 ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆.

These DOE arguments suggest that the "plurality of [] metal conductors" layer is *not* the ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ in the VT1195SFQ, because in both of these arguments, ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆." It is illogical that the TAICs define the "plurality of [] metal conductors" as the "▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆" but later describe it as ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆.

After extensive discussion during the motion hearing, the parties tentatively agreed upon the following description of the structure in the VT1195SFQ that maps to the key Claim 1 limitations: "▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆." The parties are directed to meet and confer in the event this description needs further clarification. Volterra's motion to strike the TAICs with respect to Plaintiff's description of the structure(s) of the VT1195SFQ meeting the "plurality of [] metal conductors" limitations is granted, and Plaintiff is granted leave to amend in accordance with this order and the parties' representations at the hearing.

## B. Alternative Literal Infringement Theories and DOE Arguments

Previously, this court indicated that it would preclude Plaintiff from asserting its alternative literal infringement theories. However, if Plaintiff is able to clarify its literal infringement contentions with respect to the "plurality of [] metal conductors" limitations as discussed above, and is able to specifically identify the infringing structures in any alternative literal infringement contentions, Plaintiff is granted leave to amend its infringement contentions to state alternative theories of literal infringement. For example, at the hearing, Plaintiff's counsel posited that an

---

[6] At the hearing, the parties and the court variously referred to the accused structure ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆. The court notes that this variation is insignificant so long as Plaintiff clearly indicates exactly what structure—▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆—in the VT1195SFQ meets the "plurality of [] metal conductors" limitations.

[7] At the hearing, Volterra indicated that its products have ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

1  alternative theory of literal infringement might describe the "plurality of [] metal conductors"
2  limitations as being met by the ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
3  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Parties are directed to meet and confer to ensure that the
4  alternative theories of literal infringement, if there are any, are appropriately specific. Plaintiff is
5  also granted leave to amend its DOE arguments, e.g., to restate what was presented as a DOE
6  argument in the TAICs as an alternative theory of literal infringement, or to revise the language of
7  the DOE arguments so they are consistent with the revised language in the literal infringement
8  contention(s). However, Plaintiff may not add new theories of infringement that did not appear
9  (either as a literal infringement theory or an argument for infringement under the DOE) in the
10 TAICs.

**C. Dependent Claims (Claims 2-8)**

Volterra initially argued that some of Plaintiff's infringement contentions with respect to the dependent claims of the '730 patent (Claims 2-8) were inadequate and unclear. However in the reply brief and at the hearing, Volterra conceded that "Infineon has now offered to make certain changes which help to clarify certain minor deficiencies in the TAICs."[9] Reply [Docket No. 257] at 10. Plaintiff is granted leave to amend its infringement contentions to make these clarifications.

Volterra's counsel conceded at the hearing that all but one of its remaining concerns about the infringement contentions on Claims 2-8 would be resolved through Plaintiff's clarification of its contentions with respect to Claim 1 as described above. Volterra's outstanding concern is that Plaintiff did not explicitly assert infringement under the DOE on Claims 6-8. Plaintiff has offered to amend its infringement contentions to explicitly state that "The Accused Products infringe Claims 6-8 under the doctrine of equivalents to the extent that they meet the 'metal conductor,' 'bumps,' and 'in contact' elements of Claims 1 and 5 under the doctrine of equivalents. The doctrine of equivalents arguments for these elements are explained in the chart for Claim 1."

---

[8] *See supra* n. 6.

[9] Those "minor deficiencies" are described in pages 16-18 of Plaintiff's Opposition to the Motion to Strike the TAICs [Docket No. 251]. In one, Plaintiff unintentionally omitted a word, and has proposed adding it back in. In another, Plaintiff has proposed clarifying that the structures described in Claim 2 refer to the structures defined in Claim 1.

7

Opposition at 19.  Although not strictly necessary, this amendment would clarify the scope of Plaintiff's DOE arguments with respect to Claims 6-8, and Plaintiff is granted leave to so amend.

### D. Representativeness of VT1195SQF Product

Plaintiff has provided only one claim chart for a single product: Volterra's VT1195SFQ.  A patentee is not require to provide a claim chart for each accused product if the chart provided is representative of the other accused products.  "A party claiming infringement does not have to reverse engineer every one of a defendant's products. Instead, a plaintiff must only demonstrate why it believed before filing the claim that it had a reasonable chance of proving infringement." *Renesas Tech. Corp.*, *supra* n. 1, 2004 WL 2600466 at *4 (finding that patentee presented sufficient evidence to accuse 160 products in a single claim chart where patentee reverse engineered only 3 products and provided declarations in support of contentions that all products infringe) (citations omitted); *see also Implicit Networks Inc. v. Hewlett-Packard Co.*, No. 10-cv-3746 SI, 2011 WL 3954809 (N.D. Cal. Sept. 7, 2011) (approving use of single claim chart to represent 120 products where patentee did not reverse engineer any products and instead relied primarily on "citations to HP manuals and other HP documentation" to explain characteristics of other accused products).

In this version of its infringement contentions, Plaintiff has provided nearly 50 pages of analysis supporting its argument that the VT1195SFQ product is representative of the other Accused Products.  This analysis is based on Plaintiff's reverse engineering of eight of the Accused Products, photographs of eighteen products (the fifteen products listed in the SAICs, plus the three newly added model numbers), materials from Volterra's website describing the internal composition of its products, and Volterra's presentation to an industry group on ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇.  *See* Fisher MTS Decl. Ex. B Appx. A at 70-117.  Plaintiff asserts that the evidence and analysis demonstrate that "all of the Accused Products share substantially the same infringing structures, from ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇"  Opposition at 20.  Plaintiff elaborated on the characteristics shared by the Accused Products:

1
2
3
4
5
6
7    *Id.*; *see also* Fisher MTS Decl. Ex. B Appx. A at 70-117.

8        Volterra asserts that the VT1195SFQ is not representative of the Accused Products because
9 there are ███████████████████████████████████████████████████████████████
10 ███████████████████████████████████████████████████████████████████████
11 ██████████████████████████████████ Motion to Strike at 23-24. However, these differences
12 do not appear to matter. The existence of product differences does not necessarily affect the
13 question of whether a product is representative of others. The differences must be relevant to the
14 infringement contentions. The differences identified by Volterra are not relevant.

15        Next, Volterra argues that not all of the Accused Products use ███████████████
16 ██████ Volterra made this argument in its opening brief, but did not explain why the distinction
17 was significant in light of the fact that Plaintiff had described the relevant infringing structures
18 without reference to the existence of ████████.[10] Plaintiff's counsel contended at the motion
19 hearing that whether an accused product has ████████ would not make a difference to Plaintiff's
20 infringement contentions; indeed, neither the TAICs nor the above-discussed proposed revisions to
21 the TAICs depend on or reference the existence of ████████ They *do* reference the existence of a
22 ████████, and Volterra's counsel conceded that all of the accused products, ██████████
23 ██████████████████. Accordingly, the court holds that the claim chart for the VT1195SFQ
24

---

25    [10] It was not until the reply brief that Volterra attached a top-down image of ████████
26 ████████████████████████████████████████████████████████████████████████
27 ████████████████████████████████ The court declines to consider further the
28 differences between the VT1195SFQ and ████████ products because Volterra raised the ████████ on reply and did not give Plaintiff an opportunity to fully address the issue.

product is adequately representative of all of the accused products, and Volterra's motion to strike is denied in this respect.

### IV. CONCLUSION

For the reasons stated above, Plaintiff's motion for leave to amend the infringement contentions to add three new products is granted, and Volterra's motion to strike the TAICs is granted in part and denied in part. The parties are directed to meet and confer regarding the issues raised at the hearing and in this order. Plaintiff is granted leave to amend its infringement contentions only to bring them in conformity with this order. Plaintiff must serve its amended infringement contentions by **August 2, 2013**.

IT IS SO ORDERED.

Dated: July 8, 2013

DONNA M. RYU
United States Magistrate Judge